In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-2421

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CODELL JACKSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 06 CR 50072—**Philip G. Reinhard**, *Judge.*

ARGUED APRIL 17, 2008—DECIDED OCTOBER 29, 2008

Before RIPPLE, MANION, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.*   Codell Jackson was convicted
of being a felon in possession of a firearm in violation of
18 U.S.C. § 922(g)(1). The district court, focusing on Jack-
son's unusually extensive criminal history, imposed a
sentence of 96 months' imprisonment, which exceeded
the top of the advisory guidelines imprisonment range
by 18 months. Jackson appeals, challenging the reason-
ableness of his sentence, and we affirm.

**I. Background**

In the early afternoon of November 1, 2006, Rockford, Illinois police officers approached a parked car on suspicion that the occupants possessed marijuana. One officer approached the driver's-side door, and Jackson, who was the front passenger in the vehicle, grabbed the gear shifter, put the car into gear, and instructed the driver to go. The car accelerated a few feet toward another approaching officer, who drew his firearm and shouted at the occupants to stop. The driver then stopped the vehicle but ignored officers' instructions to put it into "park," and officers physically removed him from the vehicle. While police handcuffed the driver, Jackson attempted to flee on foot, ignoring officers' instructions to remain in the vehicle. One officer attempted to stop Jackson, but he resisted, struggling with the officer and pulling away by wriggling out of his shirt. During the struggle, Jackson inadvertently dropped a loaded firearm (a 9mm semiautomatic handgun) that had been concealed on his person. He then fled on foot, but officers caught up to him, and after another struggle, successfully arrested him.

On November 14, 2006, a grand jury returned a one-count indictment charging Jackson, who had previously been convicted of a state felony offense, with knowingly possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). The indictment also contained a forfeiture allegation regarding the handgun pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c). Jackson was appointed counsel, and on March 19, 2007, pursuant to a

written plea agreement—in which the parties agreed on the relevant sentencing guidelines and the government retained the option to recommend any sentence of imprisonment it deemed appropriate—he pled guilty and admitted the forfeiture allegation.

The presentence report, to which Jackson did not object, indicated that the November 1 incident was neither his first brush with law enforcement nor his first attempt to resist arrest. Indeed, at the young age of 25, Jackson had already accumulated some 32 criminal history points (easily placing him in the highest possible criminal history category, VI) resulting from a variety of convictions, including four state convictions for resisting a peace officer. Jackson's other prior state convictions that factored into his criminal history score included: (1) several misdemeanor convictions, including convictions for criminal trespass, battery/domestic battery, failure to have a valid firearm owner's identification (FOID) card, driving with a suspended or revoked driver's license, and operating an uninsured vehicle; and (2) three felony convictions, including possession with intent to distribute cocaine within 1000 feet of a school, possession of a stolen vehicle, and possession of a firearm by a convicted felon. Because Jackson had a prior felony conviction for a controlled substance offense, and because the firearm involved in the instant offense was stolen, his base offense level was 22. *See* U.S.S.G. § 2K2.1(a)(4)(A), (b)(4)(A). Jackson received a three-level reduction for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a), (b), yielding an adjusted offense level of 19. With a criminal history category of VI and an offense level of 19, the

presence report indicated that Jackson's guidelines imprisonment range was 63-78 months, and the maximum possible term of imprisonment was 10 years. *See* 18 U.S.C. § 924(a)(2). Two days before the sentencing hearing, on June 6, 2007, the district court judge notified defense counsel to be prepared, in light of Jackson's unusually extensive criminal history (even for a Category VI defendant), for the court's consideration of an above-guidelines sentence.

At the June 8, 2007, sentencing hearing, the district court adopted the facts and the guidelines calculations as set forth in the presence report. At the outset of the hearing, the court reiterated its intention to consider an above-guidelines sentence:

> [T]he court is very concerned with the defendant's—not only his prior felonies, but he's committed parole violations in the past, and he's only 25 years old, and he has a history of dealing in drugs and fighting. Those are all things that the court would consider.
>
> And considering the fact that he has 32 criminal history points, at least under the guidelines, that is—under 4A1.3, that is a possibility for or a consideration for an upward variance that his guideline range, which is determined in part by the criminal history category, it doesn't represent the true facts when you look at—I think he only needs 13 points or so to get a criminal history category of six, and he has more than double that.

The government then recommended a sentence at the high end of the guidelines imprisonment range. The

government characterized Jackson's 32 criminal history points, which were more than double the number required (13) to put him in the highest criminal history category (VI), as an "astounding" number for a 25-year-old. The government also noted that, as detailed in the presentence report, Jackson had a history of fighting in jail and resisting arrest.

In response to the government's recommendation of a high-guidelines sentence and the court's indication that it might impose an above-guidelines sentence, Jackson's attorney argued for a sentence near the midpoint of the guidelines imprisonment range. He first pointed to U.S.S.G. § 4A1.3(a)(1), which indicates that an above-guidelines sentence may be warranted if "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." Jackson's attorney emphasized that the Sentencing Commission deliberately chose to create § 4A1.3 instead of creating a criminal history category higher than VI. And he argued that none of the § 4A1.3-specified indicators of an under-representative criminal history category—such as prior sentences not used in computing the criminal history category, sentences of substantially more than one year imposed for independent crimes, or prior similar misconduct established by civil adjudication, *see* § 4A1.3(a)(2)(A), (B), (C)—were present. In response, the district court judge explained his understanding of the post-*Booker* role of § 4A1.3:

> Let me just point out one other thing that earlier
> I had mentioned [§] 4A1.3. That, of course, was
> when the guidelines were sort of mandatory, and
> I think that [§] 4A1.3 is sort of blended into what
> the factors are under [§] 3553(a). . . . I think that is
> one of the components where you look to the
> nature and circumstances of the offense and the
> history and characteristics of the defendant. So,
> that's what I consider as part of the history and
> characteristics, the fact of the number of criminal
> history points. . . . I only cite it [§ 4A1.3] to show
> that the upward departure, at least it's in
> there, but I think it's covered in the 3553(a) factors,
> which are what I am considering.

Jackson's attorney responded by indicating his under-
standing that the sentencing court must, under post-*Booker*
law, consider the guidelines, albeit "almost . . . as an
additional element within the [§] 3553 [factors]," and
the judge indicated that he agreed.

Jackson's attorney made several additional arguments.
He noted that a within-guidelines sentence would signifi-
cantly exceed any sentence Jackson had previously re-
ceived. He pointed out that several of Jackson's criminal
history points resulted from traffic offenses that could
prove to be poor predictors of recidivism for more
serious crimes. He noted that Jackson had been
diagnosed in 1997 as "borderline intellectual functioning,"
which may have contributed to his problems with aggres-
sion. He also noted Jackson's youth at the time of his
prior offenses and the possibility that he would mature.

And finally, he pointed out that Jackson had earned a number of certificates for his completion of religious courses during his most recent jail stint in an attempt to reform himself. In sum, Jackson's attorney argued: that a within-guidelines sentence, which would significantly exceed any of his prior sentences, would adequately punish him and reflect the seriousness of his offense; that Jackson's high criminal history score was somewhat misleading because a number of traffic offenses contributed to that score; that Jackson's personal background and characteristics—including his youth, borderline intellectual functioning, and recent religious awakening—were factors mitigating against a longer sentence; and that the imposition of an above-guidelines sentence would be inconsistent with § 4A1.3.

The district court, in weighing the § 3553(a) factors, rejected these arguments. With respect to Jackson's multiple convictions for driving on a revoked/suspended license, the court noted that this showed that Jackson "continues to drive after he's been arrested and convicted for a serious violation," reflecting a "repeated pattern" of "disrespect for the law" that "should reflect on his overall conduct." In this vein, the court mentioned that Jackson "probably owes a substantial amount of money to some court, state court"; Jackson's attorney provided the figure, $3900, and the court responded, "So it's a pattern that exists." The court also noted Jackson's multitude of convictions for more serious offenses, including a state felony conviction for an offense (unlawful firearm possession by a convicted felon) nearly identical to the present federal one, in determining that he had exhibited a dis-

turbing pattern of disrespect for the law. Further, the court pointed out that Jackson's instant offense involved not only unlawful possession of a weapon, but also a dangerous attempt to flee that could have caused physical harm to the police. The court considered a letter that Jackson had written to the court expressing remorse and his intention to reform himself, but questioned his sincerity in light of several similar letters he had written to state sentencing judges. And as already noted, the court had earlier indicated that it incorporated consideration of § 4A1.3 as an advisory factor in the larger § 3553(a) analysis.

The court concluded by explaining its decision to impose an above-guidelines sentence with reference to several of the § 3553(a) factors:

> So, looking at all the offenses that you've committed, Mr. Jackson, certainly your prior history does not help you. . . .
>
>     . . . .
>
> And to promote—a sentence must promote respect for the law and to provide just punishment for the offense, that's what I'm trying to do here. I must look at what is going to deter you, and in the past lighter sentences have not deterred you. And I've got to look at what's going to deter other people. And if I let him off easy for an offense by a felon who has a weapon, I'm not providing any deterrence. I think I am protecting the public from further crimes by you when I impose the sentence that I'm going to impose.

I guess bottom line is I think in considering all of the factors which I'm supposed to consider, they justify some sort of enhanced sentence, and that's what I'm going to impose. I'm not going to—I think I would be perfectly justified, given all of what I've said, to impose the maximum sentence. I'm not. I'm going to hope that what you've just told me in your letter is not just a bunch of BS.

. . . .

But I don't believe that the advisory range is the appropriate range. I don't believe the maximum sentence is. But the sentence that I feel is appropriate and that I'm going to impose in this case is 96 months . . . . I haven't imposed the maximum probably because you've earned those certificates. And I hope it's not a game with you.

Therefore, the court imposed a sentence of 8 years of imprisonment (18 months more than the high end of the guidelines range), 3 years of supervised release, and monetary penalties amounting to $300. Jackson timely appealed, challenging only his sentence.

## II. Discussion

We review Jackson's sentence for reasonableness under a deferential abuse-of-discretion standard. *United States v. Omole*, 523 F.3d 691, 696 (7th Cir. 2008) (citing *United States v. Booker*, 543 U.S. 220, 260-63 (2005), and *Gall v. United States*, 128 S. Ct. 586, 597 (2007)). Although a sentence that falls within a properly calculated guide-

lines range is entitled to a presumption of reasonableness, there is no corresponding presumption of unreasonableness for a non-guidelines sentence. *Id.* (citing *Rita v. United States*, 127 S. Ct. 2456, 2462-63 (2007), and *Gall*, 128 S. Ct. at 597).

Our review involves a two-step process. First, we ensure that the sentencing judge did not commit any "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range." *Gall*, 128 S. Ct. at 597; *see also Omole*, 523 F.3d at 697. If the sentence is procedurally sound, we then evaluate its substantive reasonableness. The sentencing court must apply the factors set forth in 18 U.S.C. § 3553(a) in deciding whether to impose a sentence within the advisory guidelines range. *United States v. Miranda*, 505 F.3d 785, 791 (7th Cir. 2007). Those factors, which are still mandatory after *Booker* (unlike the Sentencing Guidelines themselves), "are broad, vague, and open-ended," leaving the sentencing judge with "considerable discretion to individualize the sentence to the offense and offender as long as the judge's reasoning is consistent with § 3553(a)." *United States v. Wachowiak*, 496 F.3d 744, 748 (7th Cir. 2007). Thus, under the deferential abuse-of-discretion standard, the mere fact that we might have chosen a different sentence in the first instance is insufficient for reversal. *Gall*, 128 S. Ct. at 597.

If the sentence imposed lies outside the properly calcu-lated guidelines range, we "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on the whole, justify the extent of the variance." *Id.* Thus, although "'a major departure should be supported by a more sig-nificant justification than a minor one,'" *Omole*, 523 F.3d at 697 (quoting *Gall*, 128 S. Ct. at 597), all sentences, whether within or outside the guidelines, are reviewed for reasonableness under the abuse-of-discretion stan-dard. *Gall*, 128 S. Ct. at 597. An above-guidelines sentence is more likely to be reasonable if it is based on factors "sufficiently particularized to the individual circumstances of the case" rather than factors "common to offenders with like crimes." *Wachowiak*, 496 F.3d at 750; *see also Omole*, 523 F.3d at 698.

Jackson does not challenge the district court's calcula-tion of the appropriate guidelines range, nor does he argue that the court failed to consider the § 3553(a) factors or selected a sentence based on clearly erroneous facts. Nonetheless, his four-pronged challenge to his sentence has both procedural and substantive aspects. He argues that the district court erred by: (1) failing to adhere to the U.S.S.G. § 4A1.3 policy statement in imposing an above-guidelines sentence; (2) overestimating the severity of his criminal history because several of his criminal history points resulted from traffic offenses; (3) relying in part on unpaid fines in selecting the appro-priate sentence; and (4) failing to consider his argu-ments for a shorter sentence based upon his youth and borderline intellectual functioning.

Jackson first contends that his sentence was unreasonable because the court failed to adhere to the § 4A1.3 policy statement concerning upward departures. Specifically, he argues that the court failed to consider "the nature of the prior offenses rather than simply their number," per Application Note 2(B), and that the court failed to specify in writing "the specific reasons why the applicable category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes," per § 4A1.3(c)(1). This argument fails for two reasons. First, in weighing Jackson's criminal history in the context of the § 3553(a) factors, the court expressly considered not only the number, but also the nature of Jackson's previous offenses—including his three previous felonies, one of which was remarkably similar to his present offense. In this regard, the court did not deviate from § 4A1.3. Second and more importantly, after *Booker*, a sentencing court is no longer required to follow § 4A1.3 when imposing an above-guidelines sentence. *United States v. McIntyre*, 531 F.3d 481, 483 (7th Cir. 2008) (per curiam); *see also United States v. Valle*, 458 F.3d 652, 657-58 (7th Cir.), *cert. denied*, 127 S. Ct. 843 (2006); *United States v. Castro-Juarez*, 425 F.3d 430, 434-36 (7th Cir. 2005). Thus, although we have suggested that a judge imposing an out-of-guidelines sentence should commit his thoughts to writing, *see United States v. Higdon*, 531 F.3d 561, 565 (7th Cir. 2008), a written explanation is not required. "Indeed, we will uphold an above-guidelines sentence so long as the district court offered an adequate statement of its reasons, consistent

with 18 U.S.C. § 3553(a), for imposing such a sentence." *McIntyre*, 531 F.3d at 483 (citing *Castro-Juarez*, 425 F.3d at 436). And the judge's comments at sentencing, as recounted above, clearly indicated that he properly incorporated consideration of the § 4A1.3 policy statement into his overall § 3553(a) analysis. *See* § 3553(a)(5) (directing the sentencing court to consider the Sentencing Commission's policy statements as one sentencing factor).

Jackson next argues that, in choosing to impose an above-guidelines sentence, the district court overestimated the severity of his criminal history, because some of his criminal history points resulted from several convictions for driving with a suspended or revoked driver's license and a single conviction for operating an uninsured vehicle. This amounts to a challenge to the substantive reasonableness of Jackson's sentence. As previously discussed, a non-guidelines sentence is more likely to be reasonable if it is based on factors particularized to the individual defendant, as opposed to factors common to all offenders with like crimes. *Wachowiak*, 496 F.3d at 750; *see also Omole*, 523 F.3d at 698. And Jackson's above-guidelines sentence was based on such particularized factors, most notably his 32 criminal history points, which more than doubled the 13-point threshold for entering the highest category. Jackson fails to explain why the district court should have been required to disregard his traffic offenses in evaluating his lengthy and substantial criminal history. They certainly reflect a flouting of the legal requirements of driving and a pattern of disregard for the punishment imposed by courts for those transgressions. And we cannot find fault

with the district court's conclusion that these offenses, coupled with Jackson's many more serious convictions, manifested an unusually disturbing pattern of "disrespect for the law" (as reflected in his 32 criminal history points and patterns of contempt for the law at all levels at which he encountered it) that warranted a sentence, consistent with the § 3553(a) factors, above the guidelines range.

Next, Jackson argues that the district court improperly relied "heavily" on his unpaid traffic fines in deciding to impose an above-guidelines sentence. This characterization is belied by the sentencing transcript, which reveals that the court mentioned unpaid traffic fines only in a brief, offhand fashion when discussing Jackson's larger pattern of disregard for the law. Nonetheless, Jackson contends that he failed to pay these fines only because he was indigent and that the district court abused its discretion by even mentioning the unpaid fines. However, the scenario in the present case is far removed from the cases cited by Jackson, in which probation was revoked solely based on failure to pay a fine, *see Bearden v. Georgia*, 461 U.S. 660, 672-73 (1983), or where incarceration resulted solely from inability to pay a fine, *see Tate v. Short*, 401 U.S. 395 (1971). In each of those cases, the defendant's very imprisonment hinged on the unpaid fines; here, in contrast, neither Jackson's imprisonment nor the length of his sentence depended on unpaid fines. At most, the district court considered the unpaid fines as a small element in a much larger, well-documented pattern of disregard for the law. Moreover, Jackson has failed to demonstrate that his failure to pay these fines

was the result of indigence; his failure to pay may have been the result of a conscious decision or neglect. *Cf. Bearden*, 461 U.S. at 672 (probation revocation based on willful refusal or failure to make bona fide effort to pay, rather than indigence, would not pose constitutional problems). Under these circumstances, we cannot say that the district court abused its discretion by mentioning Jackson's unpaid traffic fines as part of a larger pattern of disregard for the law in weighing the § 3553(a) factors.

Finally, Jackson contends that the district court erred by failing to consider two mitigating personal characteristics—his youth and borderline intellectual functioning. With respect to Jackson's youth, the sentencing transcript reveals that the district court did consider this factor; unfortunately for Jackson, it happens to cut against him in this case. In Jackson's case, as the court suggested, his accumulation of 32 criminal history points at the young age of 25 reflects an alarming rate of recidivism. Unlike the defendant in *Gall*, which Jackson cites in support of his argument, Jackson's instant criminal activity was not followed by a period of time during which he renounced criminal activity and dramatically reformed himself. *See Gall*, 128 S. Ct. at 601. In *Gall*, it was that "dramatic contrast" between the defendant's criminal activity and his post-offense behavior that made it "not unreasonable for the District Judge to view Gall's immaturity at the time of the offense as a mitigating factor, and his later behavior as a sign that he had matured and would not engage in such impetuous and ill-considered conduct in the future." *Id.* There was no such "dramatic contrast" here

between Jackson's criminal activity and his post-offense conduct. And contrary to Jackson's suggestion, *Gall* does not require district courts to always weigh youth as a mitigating factor in sentencing.

The district court's failure to mention Jackson's borderline intellectual functioning at sentencing presents a somewhat more difficult question. The presentence report indicated that Jackson had been diagnosed as "borderline intellectual functioning" in 1997, and Jackson's attorney raised this point at sentencing, arguing that it may have contributed to his problems with aggression. However, this argument was far from a focal point; Jackson's attorney mentioned it only once (and briefly) at sentencing. The Sentencing Guidelines list diminished mental capacity as a possible ground for a departure below the guidelines range if "(1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." U.S.S.G. § 5K2.13. And a heavy sentence for an offender of diminished mental capacity may be incompatible with the primary purposes of sentencing as set forth in § 3553(a)(2). *See United States v. Miranda*, 505 F.3d 785, 793-94 (7th Cir. 2007) (explaining that a heavy sentence for a person of diminished mental capacity might not effectively deter others in the defendant's class, might not be the most effective deterrent to further crimes by the defendant, and might not be a just punishment). Thus, we have recognized that diminished mental capacity is a "ground of recognized legal merit" in seeking a lower sentence. *See United States v.*

*Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005); *see also Miranda*, 505 F.3d at 792. And "[i]f the district court fails to comment on a ground of recognized legal merit that is supported by a factual basis, 'it is likely to have committed an error or oversight.'" *Miranda*, 505 F.3d at 792 (quoting *Cunningham*, 429 F.3d at 679). Thus, the district court's failure to even mention such an argument sometimes requires a remand for resentencing. *See Miranda*, 505 F.3d at 794 (remand required where district court failed to address defendant's principal, non-frivolous argument for a lower sentence based upon well-documented and severe mental health problems); *Cunningham*, 429 F.3d at 678-80 (same).

In the present case, however, Jackson's diminished-mental-capacity argument was neither fully developed nor supported by a compelling factual basis. Jackson's attorney mentioned his borderline-intellectual-functioning diagnosis only once (and briefly) at sentencing. Moreover, he referred to a diagnosis that was some ten years old and failed to supply any documentation concerning Jackson's mental functioning in the intervening time period. This stands in stark contrast to *Miranda* and *Cunningham*, where in each case, the defendant's diminished mental capacity was the focal point of the argument for a lower sentence and was supported by extensive documentation of severe mental health problems. *See Miranda*, 505 F.3d at 787-90 (court-appointed psychiatrist diagnosed defendant with Schizoaffective Disorder, which included auditory hallucinations, command hallucinations, and delusions); *Cunningham*, 429 F.3d at 676-77 (defendant's attorney presented extensive documenta-

tion of defendant's long history of psychiatric problems, including clinical depression, acute and chronic anxiety, compulsive disorder, and attempted suicide). Nor was there an adequately developed argument (even if there may have been a vague suggestion) that Jackson's diminished mental capacity "contributed substantially to the commission of the offense." U.S.S.G. § 5K2.13; *cf. Miranda*, 505 F.3d at 789 (court-appointed psychiatrist testified at sentencing hearing that, at the time of the robbery, defendant was suffering from auditory command hallucinations directing him to rob a bank). Thus, although it might have been better for the district court judge to articulate his reason for rejecting the diminished-mental-capacity argument so that we could be certain that he "considered the factors relevant to [the] exercise" of his discretion, *Cunningham*, 429 F.3d at 679, we cannot say that the judge abused his discretion by failing to expressly address the scantily developed argument presented at sentencing in this case.

In summary, the sentence imposed was both procedurally sound and substantively reasonable. The court correctly calculated the advisory guidelines range, allowed the parties to argue for their desired sentences, and then adequately explained the chosen sentence in light of the § 3553(a) factors. The above-guidelines sentence imposed was appropriately rooted in those factors, particularly the offense and offender characteristics, § 3553(a)(1), and the need for the sentence imposed to provide just punishment, promote respect for the law, afford adequate deterrence, and protect the public from further crimes by the defendant, § 3553(a)(2).

### III. Conclusion

For the foregoing reasons, Jackson's sentence is AFFIRMED.