NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 4, 2010
Decided August 17, 2010

**Before**

RICHARD A. POSNER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

| | |
|---|---|
| No. 09-3977 | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | |
| | No. 1:08-cr-893 |
| *v.* | |
| JUSTIN HOUGHTALING, *Defendant-Appellant.* | James T. Moody, *Judge.* |

**O R D E R**

While serving a state sentence for first-degree murder, defendant Justin Houghtaling sent a letter to a federal district judge threatening to kill her. The return address and DNA on the envelope led authorities to Houghtaling, and he pled guilty to mailing a threatening letter to a federal judge in violation of 18 U.S.C. § 876(c). The district court sentenced Houghtaling to the statutory maximum – 120 months in prison – more than double the high end of the calculated Sentencing Guidelines range of 41 to 51 months, to be served consecutive to the state sentence. Houghtaling appeals, arguing that his sentence is unreasonable and excessive because, he contends, the district court relied too heavily on the letter's vile racist and anti-Semitic content and failed to consider his personal history and characteristics.

We affirm the sentence. The district court considered the relevant factors and provided a reasoned basis for exercising its discretion under 18 U.S.C. § 3553. The district court focused on the abhorrent content of the letter and the gratuitous cruelty the threat attempted to inflict on the judge. The district court was not impressed by the mitigation arguments and made a reasonable choice to protect the public from Houghtaling by incapacitating him for as long as the law would allow.

We start with the contents of the letter. Houghtaling claimed to head a currently dormant Aryan organization that follows the teachings of two white supremacists. He accused the judge of being a "race traitor and a Jude lover whore who prostitutes herself to the niggers, spics and Jude's." He referred repeatedly to the tragic murders of the judge's mother and husband in 2005. Houghtaling then stated his desire to catch the judge so that he "could accomplish the deed that has started with the murder of your whore of a mother and Jude husband." He also warned the judge that if something happened to him, other members of his organization would take his place, and he threatened to "exterminate" her family name. He signed off with the statement, "I will be for you and when I do I will kill you. I am like death. I will not be stopped."

By way of mitigation, Houghtaling relies on personal information in the presentence report. His parents were reportedly physically abusive. He began drinking alcohol at age 7 and smoking marijuana at age 8. At age 9 he was diagnosed with attention deficit hyperactivity disorder and bipolar disorder. After threatening his family, he was sent to a youth home, where he lived for two years. Trouble with the law led him to spend the years between the ages of 14 and 18 in a juvenile detention center. He reported that after his release at age 18, he consumed alcohol, marijuana, and "ecstasy" daily, and LSD on the weekends, but he denied ever receiving or even needing treatment for substance abuse. He said that he worked for his father's roofing company for a while. Within two years after his release, however, he was convicted of murder after an accomplice in a robbery attempt shot and killed a store employee. Houghtaling has had no contact with his family since his imprisonment. While in prison, Houghtaling began taking Thorazine, an anti-psychotic medication.

The presentence report calculated a Sentencing Guideline range of 41 to 51 months in prison. The calculation began with the guideline for Threatening or Harassing Communication, U.S.S.G. § 2A6.1, and applied victim-related upward adjustments because Houghtaling targeted the judge based on her status as a government official and based on his (erroneous, as it happens) belief that her husband was Jewish, U.S.S.G. § 3A1.2 (Official Victim); § 3A1.1(a) (Hate Crime Motivation). After giving Houghtaling credit for accepting responsibility, U.S.S.G. § 3E1.1, the presentence report calculated a final offense level of 15.

Turning to criminal history, by the age of 18, Houghtaling had five juvenile adjudications and two criminal convictions, none of which counted towards his criminal history score. See U.S.S.G. § 4A1.2(d). After turning 18, Houghtaling committed four other crimes: disorderly conduct, murder, and (while imprisoned for murder) both perjury and unlawful possession of a weapon. Houghtaling's final criminal history score was 14, placing him in the highest criminal history category of VI, producing a guideline range of 41 to 51 months, which the parties do not dispute.

Houghtaling requested a within-guidelines sentence to run concurrently with his state sentence, so that there would be no additional punishment for the threat. To support his mitigation arguments, he submitted a report from the Department of Justice showing that someone with his personal history – including physical abuse, substance abuse, early antisocial behavior, academic failure, and attention disorders – has a greater likelihood of violent behavior. He argued, however, that his deficiencies could be overcome with proper treatment, which he has never had. He asserted that specific deterrence would not call for a longer sentence because his mental issues make it more difficult for him to comply with the law. He added that he sent the threatening letter to secure a transfer from a state to a federal prison, and he asserted that he had no way to carry out the threat.

The government asked for a sentence at the high end of the guidelines range to run consecutively to Houghtaling's state sentence. The government did not dispute the history of substance abuse and troubled upbringing, but noted that Houghtaling did not suffer from a mental illness and was not intoxicated at the time of the offense. The government called the offense "repulsive" with the only purpose to "threaten, degrade, and torture a judge" who had no apparent connection to Houghtaling. The government argued that the threat was worse than average because Houghtaling capitalized on the judge's personal tragedy and targeted the perceived religion and ethnicity of the judge's murdered family members. Finally, the government argued that Houghtaling's continuing offenses in prison proved that he had not made any progress towards rehabilitation.

Like the government, the district court acknowledged Houghtaling's difficult childhood and unaddressed anger, mental-health, and substance-abuse issues. The court decided, however, to impose the statutory maximum. The court based the maximum sentence on Houghtaling's repeated involvement with the justice system, even while imprisoned, and the extreme circumstances of this offense. The court noted that Houghtaling hand-picked the victim from among more than 40 federal judges in Illinois "so that he could prey upon her unimaginable and horrific personal tragedy to maximize his intended harm," and concluded that he "purposefully attempted to inflict upon her very serious emotional distress." The court characterized Houghtaling's threat as "uniquely extraordinary and extreme in its cruelty," and concluded that this crime "clearly demonstrates that he is not now and possibly never will be

capable of rehabilitation." The court believed that Houghtaling "has become an even more hardened and dangerous person" and that his "history of violence and hate makes him a substantial risk to the community." The court alluded to the policy statement in the Sentencing Guidelines that provides for increased punishment when the defendant's conduct was "unusually heinous, cruel, brutal, or degrading." See U.S.S.G. § 5K2.8 (Extreme Conduct (Policy Statement)). The court found that Houghtaling's actions intended to "prolong [the judge's] emotional pain from the murders of her mother and her husband." Therefore, the court concluded that the guidelines range was insufficient and imposed a 120-month prison term to be served after he completes his state sentence.

We review an above-guidelines sentence for an abuse of discretion, allowing due deference to the district court's judgment that, taken together, the statutory sentencing factors justify the extent to which the court went above the Guideline range. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Mays*, 593 F.3d 603, 609 (7th Cir. 2010); *United States v. Wise*, 556 F.3d 629, 632-33 (7th Cir. 2009). The district court has discretion to sentence a defendant anywhere within the statutory range based on its evaluation of the sentencing factors in 18 U.S.C. § 3553(a), but if a court chooses to go outside the guidelines range, it must give a justification commensurate with the degree of divergence. *Gall*, 552 U.S. at 49-50; *United States v. Jackson*, 547 F.3d 786, 792-93 (7th Cir. 2008).

Houghtaling first contends that the district court improperly dismissed his arguments for leniency based on his disadvantaged childhood. He blames his troubled upbringing for his current legal problems. Besides stating that specific deterrence was unlikely to curb his conduct (given his difficulty conforming his behavior to the law), however, he did not articulate how the lingering effects of his childhood otherwise would fit in with other statutory purposes of sentencing. See *United States v. Brown*, No. 09-1028, 2010 WL 2486096, at *3-4 (7th Cir. June 22, 2010) (discussing need to connect defendant's characteristics to sentencing purposes); *United States v. Beier*, 490 F.3d 572, 574-75 (7th Cir. 2007) ("A party who fails to provide cogent reasons or credible empirical evidence for or against a proposed sentence is pretty much at the mercy of the instincts and intuitions of the sentencing judge."). The district court considered this argument but was not persuaded. Houghtaling's argument about his difficulty in obeying the law certainly did not require a lower sentence and calls to mind the fact that one purpose of sentencing under section 3553(a) is to protect the public by incapacitating the defendant.

Houghtaling analogizes his situation to one of a person with a mental illness, which can support a lower sentence if the illness affected the offender's judgment, making him less objectively culpable and suggesting that with treatment the offender's risk of recidivism and need for deterrence are reduced. *See United States v. Miranda*, 505 F.3d 785, 792-93 (7th Cir.

2007). Houghtaling, however, disclaimed having a mental illness, and he showed no inclination to seek treatment for substance abuse or mental health if he received a shorter sentence. Without some assurance that Houghtaling's issues would be improved by the time he will be released, the district court did not abuse its discretion in concluding that his difficulty conforming his behavior to the law pointed toward incapacitating him for as long as possible.

Houghtaling's other basis for leniency – his inability to carry out the threat – is also unpersuasive. He contends that the letter was just an idle threat and that he posed no actual danger to the judge. But the statute criminalizes threats, not attempts, since the recipient is unlikely to know whether a threat is idle or realistic. Although the district court could have weighed differently this claimed inability to act, the court was not compelled to do. Whether or not the author of the threat has any ability to carry out the threat, "the threat itself causes emotional turmoil in the lives of those threatened, including their families, and is, therefore, itself a crime." *United States v. Austad*, 519 F.3d 431, 436 n.6 (8th Cir. 2008).

Houghtaling next argues that the reasons the district court gave were inadequate to support such a large increase above the guideline range. He contends that the nature of the threat was already inherent in the offense, and so, he asserts, the district court had no need to deviate from the range on that basis. And although he does not contest the seriousness of his criminal history, Houghtaling argues that a sentence at the statutory maximum was unreasonably harsh. We disagree.

First, the district court did not err in finding that the threat was especially egregious because Houghtaling targeted the judge because of her personal tragedy. Houghtaling had never had a case before her, and the record does not reveal any possible connection between them other than that Houghtaling follows the teachings of another white supremacist who also targeted her. By targeting such a victim and lacing the threat with vile racist and anti-Semitic hatred, Houghtaling earned the district court's decision to treat his crime as unusually cruel.

Second, we agree that Houghtaling's criminal history and continuing offenses while imprisoned demonstrate a lack of rehabilitative promise. Even though Houghtaling was only 26 years old at the time of the offense, he was already in the highest criminal history category, even without counting the 7 crimes he had committed before the age of 18. The need to protect the public was obvious. The need for incapacitation has supported significant deviations from the guidelines range in similar threatening-communications cases. See *United States v. Pinson*, 542 F.3d 822, 833-39 (10th Cir. 2008) (affirming consecutive maximum sentences on all three counts relating to threats to President, juror, and judge, totaling 240 months' imprisonment, 135 months above the guideline range, because of the need to protect the public from the 21-year-old defendant based on his violent youth); *Austad*, 519 F.3d at 434-36 (affirming 84-month

sentence, 38 months above the guideline range, for mailing threatening letter to federal judge because of defendant's extensive disciplinary record in prison and likelihood that he would continue to threaten other members of society).  The need to incapacitate Houghtaling could alone be a sufficient reason to impose a sentence at the statutory maximum.  When combined with the extreme cruelty of the offense and the lack of any reason to believe that the defendant is receptive to treatment, the district court's sentence is reasonable.

AFFIRMED.