In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-2662

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BRIAN LEMKE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 CR 385—**Blanche M. Manning**, *Judge.*

ARGUED FEBRUARY 13, 2012—DECIDED AUGUST 17, 2012

Before POSNER, WOOD, and SYKES, *Circuit Judges.*

WOOD, *Circuit Judge.* Taking an unfortunate frame from the 1996 movie *The Cable Guy,* Brian Lemke met a woman while working as a serviceman in her home, pursued her, and eventually left threatening telephone messages for her. Indicted for violating 18 U.S.C. § 875(c), which prohibits transmitting threatening communications in interstate commerce, Lemke was convicted by a jury and sentenced to 24 months' imprisonment. He

now appeals only his sentence, which he complains is unreasonable and excessive.

## I

From 1993 until around 2000, Barbara Ferry hired Lemke from time to time to service the heating and air conditioning system in her Lockport, Illinois, home. She stopped using him after he telephoned her and said that he could "come and fix her heat if [she went] out to dinner with [him]." She refused, telling him that the request was inappropriate, and ended the call. After discussing the matter with her then-husband, she filed a complaint with the Better Business Bureau. Ferry eventually divorced and moved to Chicago; she had no contact with Lemke for several years. In June 2008, however, Lemke left seven voicemail messages on Ferry's home phone. The messages were bizarre and harassing. Concerned, Ferry asked Jeffrey Brown, a man with whom she had been on one date, to ask Lemke to stop calling her. Brown left a message on Lemke's answering machine, threatening him if the calls did not stop.

Lemke tried to find the man who left that message. He found a Jeffrey Brown (unbeknownst to him, a different one) and left several hostile messages on his answering machine. The threatening nature of the messages escalated, and in August 2008 Lemke threatened to kill Brown. Having no idea who was doing this or why, Brown, an attorney, informed first his law firm and later police and the FBI. The messages continued

into 2009. FBI agent Mark Wallschlaeger notified Lemke in March 2009 that he had been contacting the wrong person and instructed him to stop harassing Brown. Lemke then turned his attention to Caroll Barry, Ferry's divorce attorney, and left threatening messages for her. Agent Wallschlaeger again notified Lemke that he should stop the harassment; this time he warned that Lemke would face prosecution if he did not. Lemke paid no attention to the warning; instead, he left two more aggressive messages for Brown and Barry. The FBI conducted an investigation into Lemke's harassment of men named Jeffrey Brown living in Chicago and discovered that three of the seven men meeting that description had received threatening calls from an unknown caller in 2008. On April 22, 2009, a security officer at Ferry's place of employment reported seeing Lemke on the premises that evening. An arrest warrant was issued for Lemke on April 24, 2009.

Just before Lemke's arrest, Agent Wallschlaeger left a message for Lemke informing him that Wallschlaeger was on his way over to Lemke's house to have a conversation. When the FBI agents and Joliet police officers arrived, Lemke was in the yard mowing the lawn. Lemke resisted when he was informed that he was under arrest. After the agents subdued him, they discovered a revolver loaded with hollow-point bullets hidden under his shirt. Upon entering Lemke's house, Agent Wallschlaeger found a hand-drawn map of Ferry's apartment and a map, work address, and residential addresses of various Jeffrey Browns. He also discovered the work address for the Brown who is the victim in this case.

Lemke was charged with two counts of knowingly transmitting in interstate commerce a communication containing a threat to injure the person of another, in violation of 18 U.S.C. § 875(c). He was convicted of both counts following a jury trial. The district court set the offense level at 20 with a criminal history category of I for a sentencing range of 33 to 41 months. It then exercised its discretion to choose a below-guidelines sentence, and imposed a term of 24 months' imprisonment. Lemke thinks that the sentence should have been lower yet, and so he has brought this appeal.

## II

The district court is entitled to "considerable discretion" in fashioning a sentence. When considering the overall reasonableness of a sentence, we thus look ultimately for abuse of discretion. *United States v. Jackson*, 547 F.3d 786, 792 (7th Cir. 2008). Along the way, we must ensure that the district court did not make any procedural errors; if it did not, then we evaluate the sentence's substantive reasonableness. *Id*. Lemke faces an uphill battle on appeal, given that his sentence is presumptively reasonable because it is below the applicable Guidelines range. See, *e.g., United States v. Balbin-Mesa*, 643 F.3d 783, 788 (10th Cir. 2011); *United States v. Poetz,* 582 F.3d 835, 837 (7th Cir. 2009).

We first consider whether the district court properly considered the sentencing factors spelled out in 18 U.S.C. § 3553(a) and adequately explained their application to Lemke's case. We find that it did. First, the district court

allowed extensive testimony at sentencing: Lemke spoke on his own behalf; Thomas A. Dunn, Lemke's cousin, offered positive character witness testimony; and Ferry testified about the negative impact Lemke's actions had on her life. The court also invited the parties to present their arguments on mitigation and aggravation. At the conclusion of argument, the court discussed the § 3553(a) factors in detail. It noted the letters submitted on Lemke's behalf and commended Lemke for offering free or discounted services for the elderly and the poor in his community. The court was not convinced, however, that in the case before it Lemke had acted out of any reasonable provocation, because "several months, as I recall, two or three months had passed between the time he received the message that he received from Jeff Brown and when he left the first threatening message for which he was convicted." It found more compelling the victim impact statements, the need for deterrence, and Lemke's resistance when he was arrested. We see nothing in this record that would support a procedural challenge to Lemke's sentence, and indeed, we do not understand him to be making such an argument.

Instead, Lemke has placed all of his cards on his argument that his 24-month sentence is substantively unreasonable. He insists that he was provoked by the first Brown to send a threatening message, but that he would never do such a thing again. He asserts that probation would be a sufficiently humiliating punishment because he is an upstanding citizen in his community. The problem is that these points at best suggest that the

district court might also have selected a lesser sentence; they say nothing about whether the sentence the court imposed is unreasonable. From the standpoint of the appellate court, the actual sentence is entitled to a presumption of reasonableness, and so it was Lemke's difficult burden to point to some reason to think that this sentence was entirely out of bounds. For what it is worth, we find it, if anything, to be lenient; it is certainly not unreasonably high. The government reminds us that Lemke's actions were "disturbing and frightening," particularly because he continued to scare his victims even after being warned by the FBI; investigators found maps of his victims' locations in Lemke's house; and he resisted arrest. The district court considered these arguments and gave Lemke a below-guidelines sentence.

### III

Lemke has not persuaded us that his sentence was either excessive or unreasonable, and so we AFFIRM the judgment of the district court.

8-17-12