In the

# United States Court of Appeals
## For the Seventh Circuit

No. 11-2783

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BRIAN A. ANNORENO,
a/k/a "ACIDBURN",

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 CR 33—**James B. Zagel**, *Judge.*

ARGUED JANUARY 14, 2013—DECIDED APRIL 12, 2013

Before EASTERBROOK, *Chief Judge*, HAMILTON, *Circuit Judge*, and MILLER, *District Judge.**

MILLER, *District Judge.* Brian Annoreno appeals his aggregate 480-month sentence after pleading guilty to charges of conspiring to receive, transport, and distribute

---

* The Honorable Robert L. Miller, Jr. of the Northern District of Indiana, sitting by designation.

child pornography, receipt of child pornography, and possession of materials containing child pornography. He contends the sentencing judge committed a variety of errors: failing to calculate the guideline range properly, failing to state his reasons or address adequately Mr. Annoreno's sentencing disparity argument, improperly considering Mr. Annoreno's mental disabilities as an aggravating factor, enhancing the sentence based on speculation about the time needed for rehabilitation, and imposing a substantively unreasonable sentence. We find no error and affirm Mr. Annoreno's sentence.

### A.

Today's case presents a number of facts not commonly seen in child pornography cases. Mr. Annoreno was an administrator—a person with significant authority—of an internet chat room called "Kiddypics & Kiddyvids." Through this chat room, users would broadcast live videos of people sexually molesting and abusing young children, including infants. The software program behind the chat room allowed users to engage in conversation and trade child pornography through "peer-to-peer" file sharing. In peer-to-peer file sharing, users make specific files and videos containing child pornography available to others in exchange for access to such files on other users' computers. Mr. Annoreno made such files on his computer available, trading for others' images and videos of child pornography. Mr. Annoreno used the screen name "Acidburn" on this site and came

to chat with a person using the name "Big_Daddy619." Using this site and the peer-to-peer software, Big_Daddy619 broadcast his molestations of four children live to other users. Big_Daddy619, who eventually cooperated with investigators and testified at Mr. Annoreno's sentencing hearing, also watched Mr. Annoreno sexually molest a child, then no more than one year old, about five times.

Investigators identified "Acidburn" sufficiently to get a warrant for the computers in the home Mr. Annoreno shared with his mother and his daughter. The investigators found more than 57 files containing child pornography on one of the computers—seven files were stored in the temporary Internet files folder and the rest had been deleted but still existed in the hard drive's unallocated space. Mr. Annoreno quickly confessed to police and helped them identify other users of the "Kiddypics & Kiddyvids" chat room, including Big_Daddy619, on whose computer investigators eventually found a close-up image of the genitalia of the child Mr. Annoreno had molested on "Kiddypics & Kiddyvids."

While in custody on those charges, Mr. Annoreno prepared a list of child pornography he wanted and offered another inmate payment if the inmate could procure it for him. His request focused on boys aged two to five. Other inmates attacked Mr. Annoreno while he was in custody, leaving him nearly blind.

After being examined and found competent to proceed, Mr. Annoreno entered into a plea agreement with

the government. Mr. Annoreno pleaded guilty to three of the counts against him and provided a factual basis for those counts. The plea agreement noted the parties' factual dispute about whether Mr. Annoreno had made a video of himself molesting and performing oral sex on a child and of that child's genitalia; the government would seek to prove those things at the sentencing hearing. The plea agreement noted that the maximum sentence permitted by statute was 50 years and set forth four potential sentencing guideline ranges that might apply, depending on the sentencing court's findings and cross-references. The plea agreement left both the government and Mr. Annoreno free to seek any sentence allowed by law.

The presentence report took the government's positions with respect to the broadcasting of the videos and images of the child Mr. Annoreno molested and acceptance of responsibility and calculated the guidelines as recommending a sentence of life imprisonment. Because the advisory guideline range exceeded the statutory maximum of 50 years, the presentence report concluded that the guidelines recommended a 50-year sentence. U.S.S.G. § 5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence."); *see, e.g., United States v. Craig*, 703 F.3d 1001, 1002 (7th Cir. 2012) ("Because his total offense level was 43, his guideline range for each count was life. . . . But the judge could not impose that sentence because the statutory maximum sentence for each count was

30 years."). Mr. Annoreno objected to the presentence report's guideline calculations to the extent they were based on the videos and images of the child. The government made technical objections relating to the grouping calculations, but wound up at the same place as the presentence report: an advisory guideline range of 50 years.

The district court conducted a two-day evidentiary hearing. At the end of the hearing, Mr. Annoreno declined the court's invitation for additional objections to the proposed guideline calculations. The sentencing court declined to resolve the government's grouping argument because the guidelines would recommend a life sentence no matter how the grouping was done. After noting that the guideline range was advisory, the court adopted the presentence report's calculations. The court invited argument concerning the sentencing factors in 18 U.S.C. § 3553(a), heard Mr. Annoreno's allocution, and imposed an aggregate 40-year sentence. Mr. Annoreno appeals that sentence.

B.

Mr. Annoreno argues that the sentencing court committed procedural and substantive error, triggering differing standards of review: "First, we conduct a *de novo* review for any procedural error. If we determine that the district court committed no procedural error, we review the sentence for substantive reasonableness under an abuse-of-discretion standard." *United States v. Marin-Castano*, 688 F.3d 899, 902 (7th Cir. 2012) (citations

omitted). As to the procedural challenge, we look to see whether the sentencing judge properly calculated the guideline range, recognized that the guideline range wasn't mandatory, considered the sentencing factors in 28 U.S.C. § 3553(a), selected a sentence based on facts that weren't clearly erroneous, and explained the sentence adequately. *Gall v. United States*, 552 U.S. 38, 53 (2007); *United States v. Jackson*, 547 F.3d 786, 792 (7th Cir. 2008).

Mr. Annoreno contends the district court didn't calculate and announce the advisory guideline range. We disagree. First, Mr. Annoreno offered no objection when the sentencing judge told both counsel, "if that's not correct, this is the time to speak to me." Nor did Mr. Annoreno object at sentencing to the sentencing court's determination that Mr. Annoreno wasn't entitled to an offense level reduction for acceptance of responsibility. Accordingly, we review the sentencing record for plain error. *United States v. Robinson*, 663 F.3d 265, 268 (7th Cir. 2011); *United States v. Brodie*, 507 F.3d 527, 530 (7th Cir. 2007).

A sentencing judge can adopt the presentence report as his or her findings if the judge decides its content is accurate. *United States v. Willis*, 300 F.3d 803, 807 (7th Cir. 2002); *United States v. Parolin*, 239 F.3d 922, 924-25 (7th Cir. 2001). The sentencing judge did so when he said the report had calculated Mr. Annoreno's guidelines correctly. Ample evidence supported his finding in the government's favor (as recommended by the presentence report) with respect to Mr. Annoreno's conduct with

the child. Mr. Annoreno admitted the conduct in his statement to authorities, and Big_Daddy619 testified during the sentencing hearing. Mr. Annoreno's efforts to obtain child pornography while in custody provide ample support for finding (as the presentence report recommended) that Mr. Annoreno hadn't accepted responsibility. *See United States v. DeLeon*, 603 F.3d 397, 409 (7th Cir. 2010) (no reduction for acceptance of responsibility where court found defendant didn't "voluntarily terminate or withdraw from criminal conduct in the sense the Guidelines seem to contemplate," citing U.S.S.G. § 3E1.1, cmt. n.1(b)). By adopting the presentence report, the sentencing judge found the advisory guideline to be life imprisonment (statutorily capped at 50 years). The judge might have used more words in adopting the presentence report and its guideline calculation, but no more were needed.

Mr. Annoreno argues that the district court should have discussed the alternative sentencing ranges mentioned in the presentence report, but he cites no authority for that proposition. He made no such request at the sentencing hearing. There might be cases in which determining the guideline recommendation requires discussing alternative methods of calculation, but we haven't required that for all cases. *See United States v. Scott*, 631 F.3d 401, 410 (7th Cir. 2011) ("While the district court might have been required to issue a more explicit ruling on this issue had [the defendant] more expressly raised it, [his] veiled references to [other guideline ranges] did not obligate the district court to address this issue more directly."). Mr. Annoreno

gives us no reason why such a discussion was necessary in his case. The sentencing court adopted the presentence report, which explained its calculations.

Two of Mr. Annoreno's next claims of error can best be considered together. Mr. Annoreno contends that the sentencing court made impermissible use of evidence of Mr. Annoreno's diminished capacity by using it as an aggravating factor rather than as a mitigating factor. Mr. Annoreno also says the sentencing court impermissibly used his need for treatment as a factor favoring longer confinement. We understand the sentencing court's comments differently.

The sentencing guideline's policy statements recognize that a lower sentence might be warranted if a defendant's significantly reduced mental capacity—meaning an impaired ability to control behavior that the defendant knows is wrongful—substantially contributed to the commission of the offense. U.S.S.G. § 5K2.13. At the sentencing hearing, Mr. Annoreno presented evidence of his low IQ (71), his susceptibility to being led by others, Attention Deficit Hyperactive Disorder, Attention Deficit Disorder, depression, manic depression, and bi-polar disorder. He notes that in *United States v. Durham*, 645 F.3d 883, 898 (7th Cir. 2011), we said, "A finding of diminished capacity should never be treated as an aggravating factor for sentencing purposes." But we also explained in *Durham* that "the distinction between diminished capacity and personal characteristics that either increase or decrease the risk of recidivism (*i.e.*, aggravating or mitigating factors) is an

important one" and "a defendant must show why a particular personal characteristic, such as a low IQ, acts as a mitigating factor, as opposed to an aggravating one." *Id.*; *see also United States Kubeczko*, 660 F.3d 260, 262-63 (7th Cir. 2011); *United States v. Garthus*, 652 F.3d 715, 717-18 (7th Cir. 2011). The sentencing court acknowledged both the aggravating and mitigating aspects of Mr. Annoreno's mental characteristics:

> He is a man who's had very bad luck. He's had very bad luck because of his genetic inheritance, which is not his fault. . . .

> But he was born with some disabilities; and while disabilities often mitigate, and in a moral sense in this case may very well mitigate the offense, in some circumstances—and this is one—they aggravate the sentence.

> . . . His mental abilities will make—in my experience, will make his therapy, to the extent there is therapy for this because there are many who get it and don't benefit, would make his therapy difficult to accomplish, but mainly, more than anything else, he is a follower. No one disagrees on that. And that idea of administering the website is part of his being a follower, not really part of being a leader.

> But the trouble is that he has a need now for something that is not only illegal, but it is destructive to children; and I don't think he has the ability to control it.

Sent. Tr., at 188-89.

The sentencing court acknowledged the mitigation to be found in culpability to the extent Mr. Annoreno's mental characteristics were viewed as significantly reduced mental capacity. The sentencing court also noted that Mr. Annoreno's mental characteristics might make him less amenable to treatment and rehabilitation, which would leave him a continuing risk to children. The sentencing court considered its options and permissibly decided that treatment was unlikely to be effective. There was no abuse of discretion in the court's analysis of Mr. Annoreno's mental characteristics, including his diminished mental capacity.

Mr. Annoreno also argues that the sentencing court gave him a longer prison sentence so that he could receive more rehabilitative treatment. Federal sentencing courts can't do that. *Tapia v. United States*, 131 S. Ct. 2382, 2391 (2011) ("[T]his is a case in which text, context, and history point to the same bottom line: Section 3582(a) precludes sentencing courts from imposing or lengthening a prison term to promote an offender's rehabilitation."); *United States v. Lucas*, 670 F.3d 784, 795 (7th Cir. 2012) ("Although 'imprisonment' is not an appropriate means of promoting correction and rehabilitation,' 18 U.S.C. § 3582(a), the mere mention that [the defendant] would have the opportunity to take part in rehabilitative programs is not prohibited under *Tapia*."). Mr. Annoreno misinterprets what the sentencing court did. The sentencing court didn't say Mr. Annoreno's sentence must be 40 years because it will take that long to rehabilitate him. The sentencing court said that given the significant amount of informa-

tion it had, Mr. Annoreno couldn't be rehabilitated through treatment, so "if he is not incapacitated for a sufficiently long period of time until he reaches an age where it will be difficult for him to participate in child exploitation issues, [then] he represents a danger to the community." Sent. Tr., at 190.

In his argument in this court, Mr. Annoreno's counsel pointed to several cases in which defendants were sentenced to well below 50 years for conduct that Mr. Annoreno saw as more egregious than his own. He argues that the sentencing court didn't address his non-frivolous argument that a sentence of 17 to 22 years was needed to avoid unwarranted sentencing disparities. Sentencing within the range advised by the sentencing guidelines accounts for concerns of unwarranted sentencing disparities, *United States v. Pape*, 601 F.3d 743, 750 (7th Cir. 2010), so we have described challenges that a within-range sentence is disparate as "pointless." *United States v. Chapman*, 694 F.3d 908, 916 (7th Cir. 2012). A below-range sentence is most unlikely to create a sentencing disparity adverse to the defendant. *See United States v. Lemke*, 693 F.3d 731, 733 (7th Cir. 2012) ("Lemke faces an uphill battle on appeal, given that his sentence is presumptively reasonable because it is below the applicable Guidelines range.").

There was no procedural error in Mr. Annoreno's sentencing.

C.

We apply an abuse of discretion standard when evaluating a sentence's reasonableness. *United States v. Taylor*, 701 F.3d 1166, 1174 (7th Cir. 2012) (citing *Gall v. United States*, 552 U.S. 38, 46 (2007)). "We will uphold [a] sentence so long as the district court offered an adequate statement of its reasons, consistent with 18 U.S.C. § 3553(a), for imposing such a sentence." *United States v. Abebe*, 651 F.3d 653, 657 (7th Cir. 2011) (quoting *United States v. Aldridge*, 642 F.3d 537, 544 (7th Cir. 2011)). "Although the district judge is not required to make factual findings as to each of the [§ 3553(a)] factors, the record on appeal should reveal that the district judge considered the factors. . . . It is simply not required that the sentencing judge tick off every possible sentencing factor or detail and discuss, separately, every nuance of every argument raised for this court to find that the sentence was proper." *United States v. Collins*, 640 F.3d 265, 270-71 (7th Cir. 2011).

Mr. Annoreno argues that his sentence was substantively unreasonable for several reasons. He says the sentencing court had no evidentiary basis on which to decide how long he needed to be imprisoned before the public would be safe, statistics show that defendants like Mr. Annoreno are unlikely to recidivate, his physical condition makes it unlikely he will offend again, and conditions of supervision protected the public adequately. A sentence within the range the sentencing guidelines recommend is presumptively reasonable. *United States v. Ramirez-Fuentes*, 703 F.3d 1038,

1049 (7th Cir. 2013). The presumption is no weaker when the sentence was ten years below what the guidelines recommend. *See United States v. Klug*, 670 F.3d 797, 800 (7th Cir. 2012) (384-month sentence presumed reasonable when guidelines recommended life). Mr. Annoreno hasn't overcome that presumption.

Mr. Annoreno demands more of a sentencing record than the law requires with respect to protecting the public. The sentencing court made its best estimate as to when it would be safe to return Mr. Annoreno to the general public, taking into account the unusually large amount of information the court had about him. Mr. Annoreno might be right that a shorter sentence would have sufficed, or the sentencing guidelines might be right that the public still will be at risk if Mr. Annoreno ever walks out of prison alive. But a lack of certainty as to how to achieve a goal doesn't mean a sentencing court can't shape a reasonable sentence with that goal in mind. The sentencing court didn't decide Mr. Annoreno's sentence on the basis of unsubstantiated beliefs about the chances of rehabilitation or recidivism of child sex offenders as a class. *Cf. United States v. Bradley*, 628 F.3d 394, 398-99 (7th Cir. 2010); *United States v. Miller*, 601 F.3d 734, 739 (7th Cir. 2010). Federal sentencing law requires no more than reasonableness, and a 40-year sentence for this 35-year-old seems consistent with what we know from the perspective of incapacitation. *See, e.g., United States v. Craig*, 703 F.3d 1001, 1003-04 (7th Cir. 2012) (Posner, J., concurring) ("For suppose the defendant had been sentenced not to 50 years in prison but to 30 years.

He would then be 76 years old when released (slightly younger if he had earned the maximum good-time credits). How likely would he be to commit further crimes at that age? . . . It is true that sex offenders are more likely to recidivate than other criminals . . . because their criminal behavior is for the most part compulsive rather than opportunistic. But capacity and desire to engage in sexual activity diminish in old age.").

Mr. Annoreno reports that research shows that "first offenders" like him (with only minor prior convictions for which the guidelines don't assess criminal history points) have only an 8.8% recidivism rate; he cites other statistics showing that sex offenders' recidivism rates are lower than for the average criminal and online offenders have lower recidivism rates, as well. Such statistics can be helpful to sentencing courts and reviewing courts alike, but since *United States v. Booker*, 543 U.S. 220, 245-46 (2005), sentencing courts try to individualize sentences rather than impose a sentence that fits the largest portion of the criminal population. That is what the sentencing court did: it looked at the need to isolate, not the average first offender or sex offender or online offender, but Brian Annoreno. Doing so is far from unreasonable.

Mr. Annoreno's near-blindness is a powerful and grievous mitigating factor, but doesn't make a sentence ten years below the advisory guideline sentence unreasonable. The blending and evaluation of mitigating factors are matters best suited for, and so generally left to, the sentencing judge's discretion. *United States v.*

*Trujillo-Castillon*, 692 F.3d 575, 578 (7th Cir. 2012) ("[T]he court considered Trujillo-Castillon's evidence in mitigation but simply assigned it lesser weight than the defendant would have liked."). Mr. Annoreno hasn't convinced us that this isn't such a case. Finally, given Mr. Annoreno's efforts to obtain child pornography while in pretrial detention, we are unpersuaded by his argument that supervised release conditions would be adequate to protect the public.

## D.

Mr. Annoreno's sentencing was procedurally sound, and his sentence was substantively reasonable. We affirm the judgment of the district court.