In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 07-3951

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

WILLIAM J. HIGDON,

*Defendant-Appellant*.

———————

Appeal from the United States District Court
for the Southern District of Indiana, Evansville Division.
No. 3EV 07-01-CR-01 Y/H—**Richard L. Young**, *Judge*.

———————

ARGUED JUNE 10, 2008—DECIDED JULY 9, 2008

———————

Before POSNER, COFFEY, and FLAUM, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant pleaded guilty to defrauding the Indiana Medicaid program of $294,000, in violation of 18 U.S.C. § 1347, which criminalizes schemes to defraud health care benefit programs. The guideline sentencing range, as the parties agreed and the judge determined, was 18 to 24 months. The presentence investigation report, and the prosecution, recommended that the defendant be sentenced within the guidelines range, but the district judge sentenced him to 60 months (as well as to pay restitution of the amount he had stolen). The defendant appeals only the prison sentence.

A high school graduate (with some college), the defendant was working as a laborer and living with his mother, who operated a small company that transports Medicaid patients to and from medical facilities, when she asked him to take over the company. He was 23 at the time (he was 26 when he was sentenced). He deliberately overbilled Medicaid.

The district judge appears to believe that the sentencing guidelines treat white-collar criminals too leniently. It is apparent from *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007), that the regime created by the *Booker* case, which demoted the guidelines from mandatory to advisory status, permits a sentencing judge to have his own penal philosophy at variance with that of the Sentencing Commission. *United States v. Orsburn*, 525 F.3d 543, 547 (7th Cir. 2008); *United States v. Bush*, 523 F.3d 727 (7th Cir. 2008); *United States v. Taylor*, 520 F.3d 746 (7th Cir. 2008); *United States v. Rodriguez*, 527 F.3d 221, 227 (1st Cir. 2008); *United States v. Evans*, 526 F.3d 155, 161 (4th Cir. 2008). As a matter of prudence, however, in recognition of the Commission's knowledge, experience, and staff resources, an individual judge should think long and hard before substituting his personal penal philosophy for that of the Commission. The guidelines are advisory, but they are not advisory in the sense in which a handbook of trial practice is, which a trial lawyer could ignore completely if he wanted to. The judge must not merely compute the guidelines sentence, he must give respectful consideration to the judgment embodied in the guidelines range that he computes. That is why the scope of judicial review varies with the extent to which the judge's out-of-guidelines sentence departs from the guidelines range; the greater the departure, the more

searching will be the appellate review of the judge's exercise of his sentencing discretion. *Gall v. United States*, 128 S. Ct. 586, 597 (2007); *United States v. Omole*, 523 F.3d 691, 697 (7th Cir. 2008); *United States v. Padilla*, 520 F.3d 766, 775 (7th Cir. 2008); *United States v. Wachowiak*, 496 F.3d 744, 749-50 (7th Cir. 2007).

The sentencing transcript in this case is laced with apparent mistakes and misunderstandings by the district judge that may have been decisive in his imposing a sentence almost three times the length of the midpoint of the guidelines range (60 months versus 21 months).

1. The judge appears to have believed that Medicaid fraud is more serious than other fraud because it is fraud against the government (Medicaid is a joint federal-state program). But the statute under which the defendant was convicted punishes frauds only against health care benefit programs, and all but one of the reported appellate cases that we have found involve public programs, such as Medicare or Medicaid. E.g., *United States v. Hunt*, 521 F.3d 636, 641 n. 2 (6th Cir. 2008); *United States v. Davis*, 490 F.3d 541, 544 (6th Cir. 2007); *United States v. Hickman*, 331 F.3d 439, 444 (5th Cir. 2003). The one is *United States v. Whited*, 311 F.3d 259, 264 (3d Cir. 2002), and it squarely holds that private programs are covered. In two cases, the very applicability of the statute to nonpublic programs is treated as an open question. *United States v. Redcorn*, 528 F.3d 727 (10th Cir. 2008); *United States v. Jones*, 471 F.3d 478, 481 n. 4 (3d Cir. 2006). We cannot tell whether the judge realized that the statute was directly and per- haps solely (though we are strongly inclined to agree with *Whited* that the statute reaches frauds against private health care benefit programs) directed at the defendant's crime, and disagreed merely with the guidelines sen-

tence under it, or thought that the defendant was being punished under a general fraud statute and that his violation of it was particularly egregious because it involved fraud against a public program of health benefits.

2. The judge appears to have believed that Medicaid fraud is also more serious than other fraud because the intended beneficiaries of the Medicaid program are the elderly and the poor. It is not a program for the elderly (the judge may have confused Medicaid with Medicare), but for a subset of the poor. More to the point, fraud against the Medicaid program is not fraud against Medicaid beneficiaries; their benefits are unaffected. There is no suggestion that without prison sentences above the applicable guidelines range, fraud against the Medicaid program will reach a point at which benefits have to be cut.

3. The judge thought that the defendant in committing the fraud had been motivated by "personal greed"; doubtless; but that is true of most frauds, and so did not distinguish the defendant from other violators of 18 U.S.C. § 1347. Moreover, the probation officer said that he had visited the house where the defendant lives with his mother and the "furnishings were noted to be modest," and "no furnishings, appliances, or conveniences . . . appeared extravagant," which distinguishes the defendant's criminal conduct from the common case in which defrauders live lavishly on their stolen funds.

4. The judge thought that if everybody could steal from the government with impunity, this "would lead to chaos in the business community." Doubtless, but the judge provided no grounds for thinking that a sentence within the guidelines range would have so little deterrent effect that it would amount to an announcement of open season on Medicaid fraud.

5. The judge seemed to believe that the defendant was remorseful and would not commit another crime. The transcript of the sentencing hearing, right up until the imposition of the sentence, suggests that the prosecutor and the judge (and of course defense counsel) believed that the defendant had learned his lesson, and one would have expected the judge to explain why this would not weigh against the imposition of a sentence above the guidelines range.

6. The reason the judge disregarded the preceding point may have been his belief that the defendant would benefit from a long prison sentence because it would enable him to obtain "needed educational, vocational training, medical care or other correctional treatment." But no need for any such things has been demonstrated. The defendant has supported himself as a factory worker, construction worker, and carpenter, and is young and in good health. The judge did not explain why a guidelines sentence would not be long enough to enable the defendant to reap whatever benefits one might expect from living in a federal prison, and of course the longer his prison term, the costlier his punishment to the federal government and the less likely he is to earn enough money to be able to pay all or (more realistically) a significant portion of the restitution ordered by the judge. Moreover, the judge did not mention 18 U.S.C. § 3582(a), which provides that in determining the length of imprisonment the court must "consider the factors set forth in section 3553(a) to the extent that they are applicable, *recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation*" (emphasis added).

7. The judge thought the complexity of the fraud required an out-of-guidelines sentence. But complexity ("sophis-

ticated means") is a guidelines factor, U.S.S.G. § 2B1.1(b)(9)(C), and neither the government, the probation service, *nor the judge* suggested adjusting the guidelines range to take account of the sophistication of the means employed by the defendant to commit the fraud. In fact, the fraud was a garden-variety overbilling fraud. The defendant made no effort to cover his tracks.

8. The judge thought the amount of money that the defendant had stolen from the Medicaid program was so great as to require (in combination with the other factors he mentioned) an out-of-guidelines sentence. Yet the defendant would have had to steal $20 million from the program for a sentence of 60 months to be within the guidelines range. U.S.S.G. § 2B1.1(a)(2), (b)(1)(L). There is no indication that the judge appreciated how far he was going against the judgment of the Sentencing Commission.

9. Finally, the judge thought the heavy sentence was necessary "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." But he did not mention any sentence that he has imposed in another case. Neither party has furnished us with any information concerning previous sentences imposed by this district judge, and our own research has not revealed any previous case in which the judge sentenced a defendant for violating 18 U.S.C. § 1347. Just the other day we reviewed a sentence of 36 months for a violation of the same statute that caused a loss of $500,000 to the Medicare program. *United States v. Wallace*, No. 07-4052, 2008 WL 2583029 (7th Cir. July 1, 2008). That was 40 percent lower than the sentence in this case, for a fraud that cost the government more than twice as much. "Sentencing disparities are at their ebb when the Guidelines

are followed, for the ranges are themselves designed to treat similar offenders similarly. That was the main goal of the Sentencing Reform Act. The more out-of-range sentences that judges impose after *Booker*, the more disparity there will be." *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006).

The last two mistakes or omissions, and also the first, could reflect the district judge's possession of a personal penal philosophy at variance with the Sentencing Commission's; and that, as we said, is permitted. But we can have no basis for confidence in such an inference, and the other six mistakes or misunderstandings that we have identified seem unrelated to a legitimate philosophical difference.

We suggest that when a judge decides to impose an out-of-guidelines sentence—whether it is above or below the guidelines range—he write out his reasons rather than relying entirely on the transcript of his oral remarks to inform the reviewing court of his grounds. The discipline of committing one's thoughts to paper not only promotes thoughtful consideration but also creates a surer path of communication with the reviewing court.

The judgment is vacated and the case remanded for resentencing.