In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1809

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LLOYD B. LOCKWOOD,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 12-CR-20070— **Harold A. Baker**, *Judge.*

ARGUED APRIL 2, 2015 — DECIDED JUNE 16, 2015

Before BAUER, POSNER, and MANION, *Circuit Judges.*

MANION, *Circuit Judge.* Lloyd Lockwood was charged with possession of a destructive device and with being a felon in possession of a firearm—in this case, a pipe bomb. Before trial, he stipulated to the fact that the object he was charged with delivering into the victims' family mailbox was a destructive device as defined by federal law. At trial, his theory was that he did not know that the package he delivered contained a destructive device, so he lacked the *mens rea* to be convicted of

these crimes. The jury disagreed, and convicted him. Lockwood's sentencing range was 33 to 41 months' imprisonment on each count. However, the district court sentenced him to concurrent terms of 120 months' imprisonment.

On appeal, Lockwood argues that the object he stipulated to possessing was not a "destructive device" because it lacked a power supply and thus could not actually explode. Additionally, Lockwood challenges the federal jurisdiction for this prosecution by arguing that the object's end caps lack a sufficient nexus to interstate commerce. Finally, Lockwood challenges the procedural and substantive reasonableness of his sentence. We affirm Lockwood's convictions, but vacate his sentence and remand for resentencing.

## I. Background

In the late 1980s, Lloyd Lockwood was convicted of a number of felonies.[1] After Lockwood served his time, he found success through his ownership and operation of an automotive repair and towing business that employed fourteen people. All signs suggested that he had abandoned the reckless criminal lifestyle that plagued his youth. Or so it seemed.

---

[1]   The exact number of felonies Lockwood has committed is unclear. The parties' stipulations state that Lockwood had three prior felony convictions for: unlawful restraint, aggravated arson, and possession of a controlled substance. Appendix 11 at ¶ 11. However, the government's brief contends that Lockwood was also convicted of felonies in 1986 for "unlawful discharge of a weapon" and in 1988 for theft. Gov't Br. 14. For purposes of this appeal, the exact number is immaterial because the magic number is one.

On March 29, 2011, Lockwood's problems returned when
an old friend, Susie Curtis, approached him upset that her
brother had initiated charges against her for ripping off their
elderly parents to the tune of $160,000. Curtis surmised that
she could avoid having to go to court on March 31 to face the
music if her brother were also in trouble, so she asked Lock-
wood to place a package inside her brother's truck and then to
call 911 and report that the package contained a bomb. Lock-
wood agreed and on March 30, 2011, he drove the package to
Decatur, Illinois, and placed it in the brother's mailbox instead
of his truck because he did not see the truck. Lockwood then
called 911. This exchange followed:

> OPERATOR:
>
> "Decatur and Macon County 911, where's your
> emergency?"
>
> LOCKWOOD:
>
> "At 1836 Ferris Drive. The guy's name is Bobby, he
> drive a black truck. The motherfucker talking about
> blowing up his job up today. And he got the bomb."

When the authorities arrived at the brother's home, they
did not find a bomb. However, the next morning the brother's
wife found an object that appeared to be a pipe bomb in the
family mailbox. The authorities were called again, and the
bomb squad arrived with a robot. The bomb squad used the
robot to knock off one of the pipe bomb-shaped object's end
caps. Then the robot picked up what remained of the pipe
bomb-shaped object, poured its black powder into an evidence
can, and then knocked off the other end cap. A photograph of

the pipe bomb-shaped object (absent the removed end caps) is reproduced below:



The deconstructed pipe bomb-shaped object consisted of an initiator, black wires, and black tape, and was surrounded by insulation and a plastic bag.

**A. The federal investigation of Lockwood**

Several months later, federal agents became interested in Lockwood after examining Curtis's cell phone records and, in November 2011, two federal agents interviewed him. Lockwood initially denied that he knew anything about the incident or the 911 call, but after one of the agents played a recording of the call, Lockwood admitted that he made it. Lockwood then described the package he delivered, but denied knowing what

was in it. When one of the agents asked why he told the 911 operator that "Bobby had a bomb" if he did not know what was in the package, Lockwood said he told the operator that there was a bomb because that was what Curtis told him to say. Lockwood then agreed to call Curtis while the agents listened in. During two phone calls to Curtis (which the agents recorded) Lockwood repeatedly asked her if the bomb was real. Curtis did not answer the questions and said that they should not text and should speak on different phones.

### B. Proceedings in the district court

On October 4, 2012, the grand jury returned an indictment against Lockwood, charging him with one count of violating 26 U.S.C. § 5861(d), which states that "[i]t shall be unlawful for any person to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record," and one count of violating 18 U.S.C. § 922(g)(1), which states that "[i]t shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year to … possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." He pleaded not guilty and proceeded to trial by a jury.

#### 1. Trial

The parties stipulated to all material facts except Lockwood's knowledge of the contents of the package. Of particular relevance to this appeal are two stipulations which read: "[t]he United States of America and the defendant, Lloyd B. Lockwood, stipulate and agree:

* * *

The Parties' Second Stipulation

A qualified explosives enforcement officer from the Bureau of Alcohol, Tobacco, Firearms, and Explosives examined the device, marked as government's group exhibit 2. The explosives enforcement officer determined that the device is consistent with an improvised explosive device, commonly known as a pipe bomb, and would be properly identified as an explosive bomb. Explosive bombs are destructive devices as that term is defined in 26 U.S.C. § 5845(f) and are required to be registered with the National Firearms Registration and Transfer Record under 26 U.S.C. § 5841(a). Government's group exhibit 2 is admitted into evidence.

* * *

The Parties' Fourth Stipulation

The end caps of the device, marked as government's exhibit 2, were made in China.

Lockwood's stipulations to these facts were consistent with his theory of defense at trial, which centered on one element common to each offense: knowing possession of the pipe bomb. In her opening statement, Lockwood's attorney told the jury:

It is a very simple and also a very difficult question for you to answer. It's simple because it's one thing: Did he or did he not know that it was a functional pipe bomb in that package before he dropped it off?

> That is the only issue in this case. Because nobody is disputing that it was a pipe bomb. I'm not going to get up here and argue that it wasn't what they say it was, or that he didn't put it in the mailbox, or that he didn't call 911, or anything that happened during the course of the investigation. Because all of that did happen.

In closing argument, Lockwood's attorney reiterated, "There is still just the one issue for you to decide, which is: Did he know before he placed the package into the [] mailbox—did he know what it was?" Lockwood's attorney then acknowledged that:

> [The prosecutor] did a very pretty job of arranging all of the other elements for you and showing you that those elements have already been established; and as I told you in the very beginning when I first got up here, I am not arguing with any of that. We are not arguing with that. The device ended up being a pipe bomb. The device was not registered. All of those things are true.

"All of those things were stipulated to," she further explained, because if the prosecutor "had brought in evidence and shown those things, dragged some ATF agent from Washington, D.C., to prove the pipe bomb was a pipe bomb, that would have been a waste of everybody's time. We're not going to fight the things that are just plainly true."

The district court held a preliminary jury instruction conference at the close of the first day of trial. During the conference, the court asked defense counsel if there was any

objection to Government Instruction No. 23, which read, in part:

> This requirement ["in or affecting commerce" and "interstate or foreign commerce"] is satisfied if a component of the destructive device traveled in interstate or foreign commerce prior to the defendant's possession of it. A component has traveled in interstate or foreign commerce if it has traveled between one state and any other state or country, or across a state or national boundary line.

Lockwood's attorney answered, "No." At the close of the government's case, Lockwood moved for a judgment of acquittal under Rule 29. The motion was denied. Then, at the conclusion of all the evidence, Lockwood renewed his Rule 29 motion for acquittal. Again, it was denied. At that point, the district court reiterated knowing possession as "the issue here" because the other elements were proven by the parties' stipulations. After a two-day trial, the jury returned a verdict of guilty on both counts. Lockwood filed post-trial motions, but they were dismissed as untimely filed. The presiding judge then retired, and a new judge was assigned to the case for sentencing.

### 2. Sentencing

On April 10, 2014, District Judge Baker held Lockwood's sentencing hearing. Due to the staleness of Lockwood's previous felony convictions, the government withdrew its initial recommendation that Lockwood be sentenced as a career criminal. The district court accepted the PSR's amended

recitation of Lockwood's criminal history, and assessed him a criminal history of category I.

The relevant portion of the amended PSR ultimately considered by the sentencing court calculated a base offense level of 18 under U.S.S.G. § 2K2.1 and added a two-point enhancement pursuant to § 2K2.1(3)(B) because the offense involved a destructive device, for a total offense level of 20. In light of Lockwood's amended criminal history category of I, this yielded an imprisonment guideline range of 33 to 41 months.

The court proceeded to hear testimony from the victims, consisting of Curtis's brother who was the initial target and his wife, who discovered the pipe bomb-shaped object in the family mailbox. The government argued for a sentence of 120 months' imprisonment. Lockwood's attorney argued for a sentence of 33 months in light of his assistance with the authorities' investigation of Curtis. Finally, Lockwood apologized profusely to the victims, but maintained his story that he did not know what was in the package he delivered. After Lockwood completed his remarks, the court explained its thinking as follows:

> THE COURT: I don't believe anything you told me. I believe you worked with this woman, Susie, and you knew, or at least you've—in the phone call you made, you said you knew it was a bomb, and it turns out that the bomb was capable of detonation. It was detonated.
>
> DEFENDANT LOCKWOOD: No, it wasn't.

THE COURT: Now—you're done. You had your right of allocution, and I'm trying to tell you my thinking and my reasoning. I have the unfortunate duty now of making a final disposition in this case.

You have a, an extensive criminal record. You have an occasion where you've discharged firearms at people, all the other things that are in the record. I don't need to repeat them all. They're extensive.

You're not—you're not an armed career criminal. I'll accept that. And it's not in the case. But I've—I've come to the conclusion, not out of revenge or punishment or anything, that you're a person who needs to be incapacitated. I need to protect society and put you away from society because of the violent nature of your history with the discharge of the firearms; that you're willing to participate in putting a bomb, an explosive device, in somebody's mailbox or whatever they were going to do with it. And the fact is that the device really was an explosive device, and it was exploded. And so for reasons of incapacitation, to take you away from society, it's the judgment of the Court that you be committed to the custody of the Attorney General, or his authorized representative, for the term of 120 months, which is the maximum I can give under the statute. Because I can only repeat myself. I think you need to be taken away from society.

The district court then entered a sentence of 120 months' imprisonment followed by three years of supervised release.

Following sentencing, the court issued a statement of reasons for the sentence imposed. The court's justification for imposing an above-guidelines sentence mirrored those offered by the court during the hearing and consisted of two sentences. Lockwood timely appealed his convictions and sentence.

## II. Analysis

### A. Lockwood's stipulation to his possession of a "destructive device"

Lockwood was convicted of possession of a destructive device. To prove that an object is a "destructive device" under 26 U.S.C. § 5845(f) and 18 U.S.C. § 921(a)(4), the government must prove that an object which the government alleges to be a "destructive device" was fully assembled and could detonate, pursuant to subpart (f)(1), or that the defendant had ready access to all necessary components to readily assemble an object that could detonate, pursuant to subpart (f)(3). *See United States v. Johnson,* 152 F.3d 618, 623 (7th Cir. 1998); *see also, United States v. Strache,* 202 F.3d 980, 986–87 (7th Cir. 2000) (affirming imposition of "destructive device" enhancement because although objects that appeared to be hand grenades lacked a "plug" necessary to be operational, defendant could readily convert them into operational destructive devices with minimal labor).

Lockwood argues that since he lacked an immediate power supply, he did not possess a "destructive device" as that phrase is defined in 26 U.S.C. § 5845(f) and 18 U.S.C. § 921(a)(4). Lockwood's argument might have persuaded the district court if he had presented it in a motion to dismiss the indictment, but in his pretrial submissions, Lockwood stipu-

lated that he possessed an explosive bomb and that the explosive bomb he possessed was a destructive device as that phrase is defined in 26 U.S.C. § 5845(f).

Despite this stipulation, Lockwood asserts that no rational jury could have found the essential elements of the crime to be present beyond a reasonable doubt. *See United States v. Johnson*, 592 F.3d 749, 754 (7th Cir. 2010). Lockwood supports this argument by directing our attention to the ATF agent's trial testimony, in which he identified all of the components he recovered from the pipe bomb-shaped object from the family mailbox, but failed to list a power supply among them.

We also reject this argument because Lockwood stipulated to the fact that the pipe bomb-shaped object he placed in the family mailbox was a destructive device. Lockwood cannot now escape the parties' stipulation by challenging his conviction based on a lack of evidence after he conceded the fact in a stipulation.

The record is clear and consistent that Lockwood elected to enter into this stipulation on the basis of his strategic decision to focus the jury's attention on the issue of whether he knowingly possessed an object alleged to be a pipe bomb. By making the strategic decision to enter into a stipulation with the government, Lockwood abandoned his ability to challenge the contents of that stipulation later at trial or on appeal. *See United States v. Fluker*, 698 F.3d 988, 998 (7th Cir. 2012); *see also*, *United States v. Muse*, 83 F.3d 672, 679 (4th Cir. 1996) ("[A] defendant may not argue at trial or on appeal that the stipulation is insufficient to prove beyond a reasonable doubt the facts or elements to which he has stipulated."). *Fluker* treats abandoned

issues as waived, 698 F.3d at 998, and waived issues are unreviewable. *United States v. Walton,* 255 F.3d 437, 441 (7th Cir. 2001). Lockwood is bound by his stipulation.

### B. Nexus to interstate commerce

The government also charged Lockwood with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). A pipe bomb qualifies as a firearm within the meaning of the statute. The statute, though, also requires the government to prove that the pipe bomb-shaped object Lockwood allegedly possessed was "in or affecting interstate commerce." 18 U.S.C. § 922(g). The parties' fourth stipulation reads that "[t]he end caps of the device, marked as government's exhibit 2, were made in China." Because China is outside of Illinois, by implication the parties stipulated to the legal conclusion that the pipe bomb-shaped object's two end caps traveled in interstate commerce.

In response, Lockwood contends that a conviction under § 922(g) requires proof that *more than one* component of the object traveled in interstate commerce. The Fourth Circuit previously rejected this argument under the exact same circumstances in *United States v. Verna,* 113 F.3d 499 (4th Cir. 1997), where the parties had stipulated that one component of the destructive device had traveled in interstate commerce (in that case, gun powder). In *Verna,* the court said that "it is simply not necessary, in order to satisfy the statute, that each and every individual part of the bomb itself have traveled across state lines." *Id.* at 503. And while our recent decision in *United States v. Foley,* 740 F.3d 1079 (7th Cir. 2014), did not involve a stipulation or a firearm, there we rejected the

defendant's sufficiency of the evidence argument and held that a computer hard-drive made in China "could satisfy the government's burden to prove the commerce element" necessary to convict a child pornographer. *Id.* at 1086. However, we need not decide whether to adopt the rationale of those authorities today because even if we treat the two end caps as one element for interstate commerce purposes, Lockwood waived this argument.

Prior to trial, Lockwood stipulated that a component of the object traveled in interstate commerce by stipulating that the ends caps were made in China.[2] Then, at trial, he stated that he had no objection to Government Instruction No. 23, which instructed the jury that the interstate nexus requirement of 18 U.S.C. § 922(g) "is satisfied if *a* component of the destructive device traveled in interstate or foreign commerce prior to the defendant's possession of it" (emphasis added).

On these bases, Lockwood is bound by his stipulation and waived any challenge to the interstate commerce element. *United States v. Gonzalez*, 319 F.3d 291, 298 (7th Cir. 2003) ("This challenge has been waived because the defendants accepted the relevant instructions—they affirmatively stated in court, 'No objection.'"). Because Lockwood stipulated that the

---

[2]  Although Lockwood reasserts the same insufficiency of the evidence argument that he made in his earlier challenge to the parties' second stipulation, we reject it again for the same reason—we will not entertain sufficiency of the evidence arguments on appeal when the parties' stipulations eliminate the need for the government to introduce evidence related to those issues at trial. *Fluker*, 698 F.3d at 998; *Muse,* 83 F.3d at 679.

elements of convictions he now challenges on appeal were met, we affirm his convictions.

### C. Lockwood's sentencing hearing

Finally, Lockwood contests the procedural soundness and substantive reasonableness of his sentence.

### 1. Procedural soundness

We review Lockwood's procedural challenge to his sentence *de novo*. *United States v. Dachman*, 743 F.3d 254, 261 (7th Cir. 2014). "A sentencing court commits procedural error by not adequately explaining its choice of sentence." *United States v. Lyons*, 733 F.3d 777, 784 (7th Cir. 2013). To ensure that the sentencing judge did not commit any "significant procedural error," *Gall v. United States*, 552 U.S. 38, 53 (2008), we examine whether it: i) properly calculated the Guideline range; ii) recognized that the Guideline range was not mandatory; iii) considered the sentencing factors in 18 U.S.C. § 3553(a); iv) selected a sentence based on facts that were not clearly erroneous; and, v) adequately explained the chosen sentence including an explanation for any deviation from the Guidelines range. *United States v. Jackson*, 547 F.3d 786, 792 (7th Cir. 2008). Lockwood argues that the district court committed significant procedural error at sentencing by failing the last three criteria.

Under the Supreme Court's teachings:

> If [the sentencing court] decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance. We find it uncontroversial that a

> major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

*Gall,* 552 U.S. at 50.

Based on *Gall*, Lockwood argues the sentencing court failed the fifth *Jackson* factor—which requires that it "adequately explain ... any deviation from the Guidelines range." 547 F.3d at 792. We stress that the question is not whether 120 months *could* be a reasonable sentence, but whether the sentencing court's "articulated reasons ... are sufficiently compelling on this record to satisfy us that the term imposed is reasonable." *United States v. Castro-Juarez,* 425 F.3d 430, 433 (7th Cir. 2005). For Lockwood, the district court's 120-month sentence was nearly three times the high end of the Guideline sentencing range.

"A departure from the Guidelines, especially a significant one, must be carefully explained." *United States v. Snyder*, 635 F.3d 956, 961 (7th Cir. 2011). Yet, the court's explanation in this case totals one full page of the sentencing transcript. We do not mean to suggest that one page of transcript may never supply an adequate justification for a sentence. However, here, the court made no explicit reference to 18 U.S.C. § 3553, it failed to explain how it balanced those factors, and it made no reference to the advisory Guideline range at all. *Snyder*, 635 F.3d at 962 ("A failure to altogether consider the Guidelines is not harmless.").

Presumably in an attempt to satisfy § 3553(a)(1) (the history and characteristics of the defendant), the sentencing court observed that Lockwood had "an extensive criminal record" and mentioned "an occasion where [he] discharged firearms at people." But the facts of his criminal history are already taken into account by Lockwood's criminal history level—category I—which was integral to the Guidelines recommendation of 33 to 41 months. The district court's allusion to the obvious fails to prove the "compelling justification" *Gall* deems necessary to impose an above-Guidelines sentence of nearly three times the high end of the Guidelines.

The court also referenced its need to "incapacitate[]" Lockwood "to protect society and put [him] away from society because of the violent nature of [his] history." While these statements promote § 3553(a)(2)(B)'s goal of affording ade-quate deterrence to criminal conduct and § 3553(a)(2)(C)'s goal of protecting the public from further crimes of the defendant, these brief remarks do not explain with particularity the reasons why Lockwood is different from the vast majority of defendants—many of whom also have criminal histories, are dangerous, and must be incapacitated to protect society—but who are not sentenced to terms of imprisonment nearly three times above the high end of the Guidelines.

When a district court imposes an sentence that is multiple times above the Guidelines, it must explain why that particular defendant requires a more severe punishment than most defendants. *See United States v. Higdon*, 531 F.3d 561, 564 (7th Cir. 2008) (vacating sentence more than two-and-a half-times the high end of the Guidelines for, *inter alia*, failing to explain why the defendant must be punished more severely than most

defendants who receive within-Guidelines sentences). In other words, the facts recounted by the court must address the *disparity*—i.e., why this defendant deserves a significantly higher sentence than others who commit the same offense.

In addition to *Higdon*, this case is also reminiscent of *United States v. Castro-Juarez*, 425 F.3d 430 (7th Cir. 2005). In *Castro-Juarez*, the defendant pleaded guilty to being present in the United States unlawfully after his removal following a felony conviction. *Id.* at 431. The high end of the Guidelines recommended a sentence of 21 months' imprisonment, but the court imposed a sentence of over twice that—48 months. *Id.* Castro-Juarez appealed his sentence, and we vacated and remanded it for resentencing because the district court did not sufficiently justify the imposition of a sentence more than double the high end of the Guideline range, even though its commentary had focused on Castro-Juarez's "repeated cycles of unlawful entry and deportation, the 'horrible' criminal record he incurred living in the United States, and his history of violent acts affecting the women and children in his life." *Id.* at 432.

In vacating Castro-Juarez's sentence, we noted that the sentencing court incorrectly focused exclusively on his criminal history. *Id.* Likewise, the district court here also focused almost exclusively on Lockwood's previous criminal history, but sprinkled in a mention of his current offense and two comments about the need to incapacitate him. Yet the thrust of the problem in both cases is the same. In order for us to uphold a sentence that is nearly three-times the Guideline recommendation, the sentencing court must provide a compelling justification, *Gall*, 552 U.S. at 50; *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005), "adequately explain ... its deviation from the

Guidelines range," and provide the reasons that the sentencing court believes the defendant is deserving of extraordinary punishment. *Jackson*, 547 F.3d at 792; *Castro-Juarez*, 425 F.3d at 437. In this case, the sentencing court's truncated reference to the defendant's criminal history, a mention of the current offense, and two comments about incapacitation, fail to adequately satisfy the procedural conditions necessary for us to sustain a sentence that is nearly three times above the Guideline recommendation.

Finally, the court made no mention of mitigation at sentencing until Lockwood's attorney inquired after the fact if the court had considered his arguments in mitigation. "District courts must consider a defendant's principal, nonfrivolous arguments in mitigation when selecting an appropriate sentence for a defendant," and they must do so on the record before imposing a sentence. *United States v. Poulin*, 745 F.3d 796, 800 (7th Cir. 2014). This procedural rule is important because it "promote[s] the perception of fair sentencing." *Gall*, 552 U.S. at 50. Lockwood only raised two arguments in mitigation—that he had assisted the authorities with their investigation of Curtis and had run a successful business. While not likely to be found compelling, these arguments are not frivolous. Although the court confirmed that it considered these arguments in mitigation, it did not make this acknowledgment until prompted by counsel *after* it imposed its sentence and it did not mention Lockwood's assistance with the authorities' investigation of Curtis at all.[3] The totality of

---

[3] We also note that the court remarked at one point in the proceeding that

(continued...)

these procedural missteps leaves us unable to meaningfully review Lockwood's sentence. *United States v. Washington*, 739 F.3d 1080, 1082 (7th Cir. 2014). Accordingly, we vacate Lockwood's sentence, and remand for resentencing.[4]

### 2. *Substantive reasonableness*

Lockwood also challenges the substantive reasonableness of his sentence. Because we conclude that the district court's sentence was procedurally insufficient, we need not decide whether his sentence is substantively reasonable. *Snyder*, 635 F.3d at 962. We express no view on whether—with the benefit of a sufficient explanation—a sentence of 120 months' imprisonment would be substantively reasonable under these circumstances.[5]

---

[3] (...continued)

it hadn't sentenced a defendant in sixteen years. While the court made this remark only in passing, sentencing courts must be cautious of extraneous comments that hinder, rather than "promote the perception of fair sentencing." *Gall*, 552 U.S. at 50.

[4] Although Lockwood argues that the sentencing court clearly erred by twice stating that the object exploded during the authorities' investigation, this argument is moot because our conclusion that the sentencing court committed procedural error under § 3553(a) is based on the undisputed commentary in the sentencing transcript. On remand, if the parties determine that there is some dispute over whether the pipe bomb-shaped object "exploded," they should present their positions to the court before resentencing so that it is adequately apprised.

[5] Still, it appears from the sentencing judge's comments that he based Lockwood's sentence primarily on two facts: 1) that Lockwood has misused

(continued...)

### III. Conclusion

Lockwood stipulated to the fact that he possessed a destructive device. He also stipulated to the fact that the two end caps on the destructive device that he possessed were made in China, which means they had a sufficient nexus to interstate commerce to confer federal jurisdiction on this prosecution. Accordingly, we AFFIRM Lockwood's convictions. However, because Lockwood's sentence was procedurally unsound, we VACATE his sentence, and REMAND this case to the district court for resentencing consistent with this opinion.

---

[5] (...continued)

firearms, and; 2) that he is the type of person who is "willing to participate in putting a bomb, an explosive device, in somebody's mailbox." By these comments, the judge appeared to reason that Lockwood needed to be incapacitated because he is likely to harm others with firearms and bombs. However, the facts do not support this conclusion. First, Lockwood's successful business enterprise is evidence that he has moved on from the gun crimes of his past. Second, the facts do *not* suggest that Lockwood intended to harm anyone with the device that he possessed. He only intended to use the device to frame Curtis's brother—which is why he called 911 immediately after he placed it in the family's mailbox. That the device remained in the family's mailbox only to be discovered the next day was not the result of Lockwood's malice, but his inability to anticipate that the authorities would not search the mailbox based on his report that "Bobby had a bomb." The best evidence of this reality is the face of the indictment: Lockwood was charged with possession of a destructive device, not attempted terrorism.