In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-1644

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JERRY J. JONES,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 97-cr-00118 — **Richard L. Young**, *Judge.*

ARGUED JUNE 10, 2020 — DECIDED JUNE 19, 2020

Before FLAUM, BARRETT, and ST. EVE, *Circuit Judges.*

FLAUM, *Circuit Judge.* In 1998, a federal jury convicted Jerry
Jones of two carjackings, an armed bank robbery, and using
firearms during those crimes of violence. The district court
sentenced him to 840 months in prison. Twenty years later,
the district court vacated its original sentence and ordered re-
sentencing because Jones no longer qualified as a career of-
fender under the federal Sentencing Guidelines.

At resentencing, Jones's effective Guidelines range was 348–390 months. The district court deviated from the Guidelines and once again sentenced Jones to 840 months in prison. That was an increase of 450 months, approximately 215% above the high end of Jones's Guidelines range. Jones now appeals his sentence. Because the district court did not sufficiently justify the extent of its deviation from the Guidelines, we vacate its judgment and remand for resentencing.

## I. Background

In September 1997, Jerry Jones and two others robbed a bank in central Indiana. As part of their plan, they first confronted a UPS driver at gunpoint, took his uniform, and hijacked his truck. The men then restrained the driver with plastic handcuffs in the back of the truck.

Upon arriving at the bank, one of them posed as the UPS driver and pretended to make a delivery to distract the bank manager from the heist. The supposed UPS driver then tied the manager's ankles together. Meanwhile, Jones brandished his firearm, ordered everyone in the bank to the floor, and demanded that someone open the vault. Jones emptied the vault, and with his gun drawn, took additional cash from a teller station. The thieves loaded over $105,000 into their getaway car and sped off, leaving the real UPS driver handcuffed in the back of the truck.

Witnesses soon spotted the robbers in their 1991 red Oldsmobile Toronado. From these reports, law enforcement received the relevant description and accordingly positioned themselves on the nearest interstate. Upon seeing Jones and his crew, state troopers tried to stop the car; instead of stopping, however, the car crossed a median and lanes of

oncoming traffic, ending up in a ditch. Jones and the others, still armed, fled on foot. They crossed through a cornfield where the police lost track of them. Coming across a farmhouse, the bandits snuck inside while the owners (a married couple) were working outside and their 18-year-old daughter was still at school. Jones and the others hid in the house for nearly six hours; one of them stashed himself in the daughter's closet.

That evening, the daughter entered her bedroom and noticed her closet door was ajar. When she opened it, a man she did not know pointed a gun in her face. The daughter screamed and her parents ran toward her. Before they could reach her, the two other men grabbed them, and at gunpoint, ordered them to sit down in the hallway. The intruders eventually corralled the entire family into the daughter's bedroom and tied them up. The three men then coerced the father of the family to drive them back to Indianapolis. Jones told the mother that, if she called the police, he and the others would kill her husband.

The father drove the robbers in his pickup truck to Indianapolis. Jones rode in the cab of the car, training his gun on the father and directing him where to go. The other two rode in the truck's covered bed. After letting all three out, the father returned home to his wife and daughter. Tragically, the memories of these events have haunted the family. The father has stated that "it goes through my mind … two, three times a week." He has further explained that, on the day it all happened, "the first thing … if I can remember right, I heard my daughter scream." His wife has recalled that "it was torture" and that "I'll never be the same." She has gone on to say that her daughter "was so devastated that she never recuperated."

A federal grand jury indicted Jones for one count of armed bank robbery in violation of 18 U.S.C. § 2113(a), (d); two counts of carjacking in violation of 18 U.S.C. § 2119; and three counts of using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). A trial jury convicted Jones of all those charges. Based on his two prior convictions for breaking and entering and armed robbery (during which Jones discharged his weapon), Jones qualified as a career offender under Sentencing Guideline § 4B1.1. The district court's 300-month sentence on the bank robbery and carjacking counts reflected that enhancement. Additionally, the three § 924(c) counts imposed a cumulative mandatory-minimum sentence of 540 months that had to run consecutively to the 300 months on the other counts. The district court therefore sentenced Jones to 840 months in prison.

In 2018, Jones petitioned the district court for a writ of habeas corpus under 28 U.S.C. § 2241, arguing he was no longer a career offender based on intervening Supreme Court precedents. The district court agreed, vacated Jones's sentence, and ordered resentencing. At resentencing, Jones's Guidelines range was 168–210 months on the three counts of bank robbery and carjacking. As to the three firearms counts, the government and the probation office both contended the same aggregate 540-month mandatory minimum sentenced applied. But Jones, invoking the First Step Act, asserted that the mandatory minimum was 180 months now. Reading the plain language of the statute, the district court decided that the change in the law applies "to any offense that was committed before" December 2018 "if a sentence for the offense has not been imposed" as of December 2018. That included Jones, the court found, overruling the government's objection. Accordingly,

Jones's effective Guidelines range was 348–390 months in prison.

The government initially recommended a 480-month sentence; however, upon learning that the carjacking and robbery counts could run consecutively, the government changed its recommendation to 840 months. The government and the district court both may have mistakenly thought that this was a lower sentence than Jones originally received. As it happens, Jones's first sentence was 840 months.

The court next considered the relevant sentencing factors under 18 U.S.C. § 3553(a). The court explained that Jones had a "history as a violent predatory individual" and the offenses were "horrific crimes of violence." Recounting Jones's conduct, the court maintained:

> The defendant put the victims in great fear, threatened … violence to members of the victims' family, tied them up, pointed guns at them, shotgun -- fired the firearms in the house during one of the break-ins in the victims' homes after the bank robbery.

Some of that statement was inaccurate. Jones did not use a shotgun, did not discharge any firearm, and broke into only one home after the robbery.

Still, the court "believe[d] the statutory maximum sentence" was appropriate. The court stressed three more factors that bolstered its conclusion: (1) Jones "would be a risk of serious criminal activity based on his prior criminal history"; (2) Jones's co-defendants, "with similar records [and] similar conduct," had received sentences of 675 months and 728 months under the mandatory Guidelines regime; and (3) after

his original federal sentencing, Jones received a 273-year sentence in Indiana for murder and robbery.

Adding the prison terms up count-by-count, the court concluded that the "total is 675 months." That was a mathematical error. The probation officer informed the court that the total was 840 months. The court recalculated and reached the same result. In doing so, the court reiterated its "intention … to give the statutory maximum on Counts 1, 3, and 5." The court confirmed that 840 months "reflects the Court's intention and its discretion here."

This timely appeal followed.

## II. Discussion

Jones argues that the district court procedurally erred when it: (1) failed to justify the extent of its 450-month deviation from the Guidelines; (2) relied on inaccurate information regarding Jones's offense conduct; and (3) neglected to adhere to the paradigm that a sentence must be sufficient, but not greater than necessary, to comply with the general purposes of sentencing. We review these alleged procedural errors at sentencing de novo. *See, e.g., United States v. Griffith*, 913 F.3d 683, 687 (7th Cir. 2019).

### A. Explanation of Sentence

A district court must adequately explain its sentence, including any deviation from the Guidelines. *See United States v. Ballard*, 950 F.3d 434, 436–37 (7th Cir. 2020). In other words, a deviating court "must consider the extent of the deviation from that range and satisfy [it]self that there is a compelling justification for it." *United States v. Vallone*, 752 F.3d 690, 693 (7th Cir. 2014). The further a sentence deviates from the Guidelines, "the more detailed the district court's explanation

must be." *United States v. Padilla*, 520 F.3d 766, 775 (7th Cir. 2008).

In this case, the effective Guidelines range was 348–390 months and the district court sentenced Jones to 840 months in prison. That is a 450-month, or 215%, deviation from the high end of the Guidelines range. A deviation of such magnitude is significant. *See Ballard*, 950 F.3d at 437 (calling a 67-month, 160% deviation "abnormally extreme"); *United States v. Henshaw*, 880 F.3d 392, 396 (7th Cir. 2018) (describing a 151-month, 100% deviation as "major"); *United States v. Ferguson*, 831 F.3d 850, 854, 855 n.2 (7th Cir. 2016) (referring to a 372-month, ~176% deviation as "unusually large" and "dramatic"); *United States v. Taylor*, 701 F.3d 1166, 1175 (7th Cir. 2012) (explaining that a sentence 153 months, or ~46%, above the upper end of the Guidelines range is "undoubtedly a harsh sentence"); *see also United States v. Snyder*, 865 F.3d 490, 502 (7th Cir. 2017) (reasoning that a court may use the full statutory range only in "an unusual case").

A significant deviation, like this one, requires an especially compelling justification. *See United States v. Lockwood*, 789 F.3d 773, 781–82 (7th Cir. 2015) (stating that district courts must carefully explain significant deviations that are "multiple times above the Guidelines"). The district court did not provide the necessary analysis here. For instance, there is nothing in the record demonstrating that the district court gave "respectful consideration to the judgment embodied in the guidelines range that [it] compute[d]." *United States v. Bradley*, 675 F.3d 1021, 1024 (7th Cir. 2012) (citation omitted). "[T]he court … need[ed] to understand the relation between the guidelines and the ultimate sentence." *Id.* at 1028 (citation and

internal quotation marks omitted). There is no evidence showing that the court made that connection.

To be sure, "the sentencing court need not frame its explanation of a sentence in terms of a departure from the guidelines range." *United States v. Vasquez-Abarca*, 946 F.3d 990, 994 (7th Cir. 2020) (citation omitted). But the court certainly "must explain why the higher sentence is appropriate," *United States v. Kuczora*, 910 F.3d 904, 908 (7th Cir. 2018), meaning why any one defendant deserves a more severe punishment than others. Put another way, while a court need not identify specific Guidelines factors and articulate why they individually or cumulatively fail to account for the nature of both offender and offense, it must "give a reason, however brief, for ignoring [the Sentencing Commission's] recommendations, which the [court] in this case did not do." *United States v. Robertson*, 648 F.3d 858, 860 (7th Cir. 2011).

The court's omission of its reason(s) not to apply the Guidelines leaves unaddressed "the *disparity*—i.e., why this defendant deserves a significantly higher sentence than others who commit the same offense." *Lockwood*, 789 F.3d at 782. A sentence close to or at "the statutory maximum creates a risk of unwarranted disparity with how similar offenders fare elsewhere." *United States v. Kirkpatrick*, 589 F.3d 414, 415 (7th Cir. 2009). The Guidelines "reflect (among other things) the goal of avoiding unwarranted disparities in how different judges treat equivalent offenses and offenders." *Henshaw*, 880 F.3d at 398 (quoting *United States v. Corner*, 598 F.3d 411, 416 (7th Cir. 2010) (en banc)).

Here, the district court acknowledged the need to avoid unwarranted sentence disparities, noting that Jones's co-defendants—"with similar records [and] similar conduct"—had

received sentences of 675 months and 728 months. Notwith-standing the three defendants' similar records and similar conduct, Jones received a sentence 165 months longer than one co-defendant and 112 months longer than the other. The court did not explain why it singled Jones out for different treatment. Quite the contrary, it synthesized the offenders and their offenses, observing they had "similar records [and] similar conduct." It was therefore incumbent on the court to specify what warranted Jones's sentence disparity. *See* 18 U.S.C. § 3553(a)(6). Without such a justification, and because the court did not sentence Jones within the Guidelines range, we cannot assure ourselves that the court sufficiently considered the interest in consistency between similarly situated defendants.

The court also supported its sentence by relying on the circumstances of Jones's offenses and his personal characteristics. The court's discussion of these factors spans about a page in the sentencing transcript. The court accurately characterized Jones's offenses as "horrific crimes of violence and threatening individuals." Similarly, it recounted his "history as a violent predatory individual"; however, "[t]he problem with this rationale is that it provides little more than what is implicit in the instant offense." *Bradley*, 675 F.3d at 1025. The district court needed to specify "the reasons why [Jones] is different from the vast majority of defendants—many of whom also have criminal histories, are dangerous, and must be incapacitated to protect society …." *Lockwood*, 789 F.3d at 782.

On appeal, we presume the Guidelines are reasonable, "and it would be odd if that presumption might be undermined merely by reference to one of the two factors (offense

level and, here, the defendant's criminal history) that the guidelines take into account in every case." *United States v. Tanner*, 628 F.3d 890, 909 (7th Cir. 2010). We recently highlighted that "emphasizing the defendant's criminal history alone does not adequately explain" a deviation as extreme as this one. *Ballard*, 950 F.3d at 438.

In this case, the critical fact that the Guidelines did not entirely account for was, admittedly, a serious one: the break-in to the farmhouse. The district court was free to conclude that that action aggravated the offenses; however; it does not appear that the district court made that determination.

Accordingly, the record here leaves us with the impression that the district court apparently selected the statutory maximum as the correct sentence for three of the six counts of conviction. Our caselaw, though, underscores that courts should reserve the statutory maximum for "unusual case[s]." *Snyder*, 865 F.3d at 502. Otherwise, we "leave[ ] little room for the marginal deterrence of persons whose additional deeds are more serious …." *Kirkpatrick*, 589 F.3d at 415. The record does not indicate one way or the other why any figure between 390 and 840 months would not be a "sufficient, but not greater than necessary" sentence for Jones. 18 U.S.C. § 3553(a). Instead, we are left to speculate whether the court fully appreciated that it was adding 450 months to the range and why it thought it was appropriate to do so.

We in no way question the gravity of Jones's offenses and his criminal history. The Guidelines may well fail to account for the devastating effects Jones's crimes had on his victims. If the district court decides that the Guidelines underrepresent reality, it should so state and clarify how it uses those findings to calculate Jones's sentence. *See United States v.*

*Johnson*, 612 F.3d 889, 897 (7th Cir. 2010). Indeed, absent a sub-
stantive reasonableness challenge, it is not for us to say
whether a Guidelines sentence is sufficient punishment or not
for Jones and his convictions. It is well within the district
court's discretion to determine whether the range is too leni-
ent. That said, if it concludes as much, the court must explain
why its sentence serves the considerations it cites. *See United
States v. Garcia*, 754 F.3d 460, 483–84 (7th Cir. 2014).

To assist district courts in this process, we have pointed
out that there are two ways to gauge the magnitude of a devi-
ation from the Guidelines: (1) calculate the percentage devia-
tion from the top of the Guidelines range to the ultimate sen-
tence; or (2) increase the number of offense levels until arriv-
ing at an appropriate Guidelines range. *See Ballard*, 950 F.3d
at 437–38; *see also United States v. Castillo*, 695 F.3d 672, 674–75
(7th Cir. 2012) (outlining these two methods to assess propri-
ety of any degree of deviation). Perhaps the district court will
choose to apply one or both approaches on remand. For now,
it is enough for us to resolve this dispute to say that the dis-
trict court procedurally erred by not providing an adequate
explanation for its upward deviation from the Guidelines.

## B. Remaining Issues

Because the district court's sentencing explanation is lack-
ing, we need not reach Jones's additional arguments on ap-
peal. Nonetheless, we add two final observations that will
hopefully streamline matters on remand. First, we have some
concern about the district court's misstatement at sentencing
that Jones wielded a shotgun, fired it (or some other gun), and
broke into multiple homes following the bank robbery. Stand-
ing alone, and particularly in this case, such an error might be
harmless. But considered in context, it reinforces the need for

remand because the court stated that it "believe[d] the statutory maximum sentence will reflect the seriousness of the offense." Even if the court based its deviation only in part on its misapprehension of the nature and circumstances of the offense, the prudent disposition is resentencing.

Second, and as an alternative ground for affirmance, the government contends that the district court erred when it held that the First Step Act applied to Jones. We agree with Jones, however, that what the government is asking for is not affirmance but the alternative relief of vacatur and remand to enlarge Jones's sentence. This is an inappropriate request in a response brief; the government needed to maintain its own cross-appeal, and by dismissing the one it filed, "it has accepted the district court's opinion as the law of the case." *United States v. One 1987 Mercedes Benz Roadster 560 SEC, VIN WDBBA48D3HA064462*, 2 F.3d 241, 243 (7th Cir. 1993); *see also United States v. Taylor*, 777 F.3d 434, 444 (7th Cir. 2015) (concluding that, in the absence of a cross-appeal from the government, we cannot review an adverse ruling to it that has the potential to extend the defendant's sentence beyond what the judgment prescribes). Having done so, the government placed the First Step Act question outside the scope of our remand order. *See, e.g.*, *United States v. Husband*, 312 F.3d 247, 251 n.3 (7th Cir. 2002) (recognizing that the law-of-the-case doctrine confines the scope of a remand).

### III. Conclusion

For the reasons stated above, we VACATE the district court's judgment and REMAND FOR RESENTENCING.